Sherman Andre **JAMES**, Appellant (Defendant below),

v.

**STATE of Indiana**, Appellee (Plaintiff below).

No. 02S00–9712–CR–704.

Supreme Court of Indiana.

Sept. 30, 1999.

937

Nikos C. Nakos, Clifford, Larmore & Nakos, Fort Wayne, Indiana, Attorney for Appellant.

Jeff Modisett, Attorney General of Indiana, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Sherman Andre James was tried for murdering an acquaintance. The trial ended in a hung jury. Fourteen months later, Defendant was retried and convicted of Murder,[1] a class A felony. Finding no trial court error, we reject Defendant's several challenges to his conviction, including a right to speedy trial violation under Ind.Crim. Rule 4(B)(1) and 4(C).

We have jurisdiction over this direct appeal because the sentence exceeds 50 years. Ind. Const. art. VII § 4; Ind. Appellate Rule 4(A)(7).

*Background*

On August 24, 1995, Ronald Lawson and Ronald Sanders encountered Defendant Sherman Andrew James. Lawson and Defendant engaged in a rather hostile conversation about a debt Defendant owed Lawson and then Defendant drove away. Shortly thereafter, Defendant pulled into an alley where Lawson and Sanders were parked. Defendant approached Lawson and shot him. Lawson died from his wounds.

On March 20, 1996, Defendant was tried for the murder of Lawson but the jury was

1. Ind.Code § 35–42–1–1 (1993).

unable to reach a verdict. On September 9, 1996, Judge Surbeck set a retrial date of September 24, 1996. Defense counsel objected to this trial date, arguing that a computer error in the juror polling system excluded minority residents. Defense counsel agreed to continue the retrial to a later date when a more fair and representative jury panel could be selected. However, the next available trial date on Judge Surbeck's calendar was not until May 27, 1997. In order to secure an earlier date, Judge Surbeck arranged for a different judge, Judge Scheibenberger, to preside over the trial on January 21, 1997.

When that date arrived, Judge Scheibenberger was unable to preside because of a conflict with another trial. After consulting with Judge Surbeck, Judge Scheibenberger placed Defendant's case back on Judge Surbeck's calender for a trial on May 27, 1997. This date was fourteen months after the date of the original trial. Defense counsel objected to this trial date and orally requested a speedy trial under Ind.Crim. Rule 4(B)(1). Judge Scheibenberger noted that the continuance of the retrial date was "due to the court congestion."

On May 27, 1997, the date of the retrial, defense counsel filed a motion to dismiss requesting Defendant's discharge pursuant to Ind.Crim. Rule 4(B)(1) and 4(C). The trial court set forth findings explaining the court congestion that delayed Defendant's trial. The trial court then denied Defendant's motion to dismiss. On the same day, defense counsel also filed a motion for recusal alleging an improper *ex parte* communication between the deputy prosecutor and Judge Surbeck. The motion for recusal was also denied. Defendant was retried and found guilty of murder.

At the time of Defendant's sentencing hearing on June 27, 1997, defense counsel filed a motion for change of judge alleging bias and prejudice on the part of Judge Surbeck. This motion was denied. The trial court then sentenced him to sixty (60) years in prison.

*Discussion*

I

A

■ Defendant argues that the State violated Ind.Crim. Rule 4(B)(1)[2] when it failed to retry him within 70 days of January 21, 1997, the date that defense counsel requested a speedy trial. Defendant contended at the time his motion to dismiss was filed (on May 27, 1997—the date the retrial began) and argues in this appeal that the trial court calendar was not congested. In support, he submitted a document listing 21 dates on which trials were not held between January 21 and May 27, 1997.[3]

This Court has held that Crim. R. 4(B)(1) applies to retrials. *Poore v. State*, 685 N.E.2d 36, 41 (Ind.1997) (holding that the time limits for a speedy trial provided for in Crim. R. 4(B) apply to a retrial following successful appeal of a habitual

**2.** Crim. R. 4(B)(1) provides:

If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivi-

sion (A) of this rule. Provided further, that the trial court may take note of congestion or an emergency without necessity· of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

**3.** Defendant also contends that Crim. R. 4(B)(1) was violated because the prosecutor did not file a motion for continuance. However, the rule does not require such motion if the trial court itself takes note of the congestion. Judge Scheibenberger did so.

offender enhancement); *Young v. State*, 482 N.E.2d 246, 249 (Ind.1985) (holding that Crim. R. 4(B) applies to a retrial following a successful appeal provided that the defendant makes a Crim. R. 4(B) request after the retrial has been ordered).

In *Clark v. State*, this Court established the burden a defendant must meet when claiming a Crim. R. 4(B)(1) violation as well as the standard of appellate review upon denial of such a claim. 659 N.E.2d 548, 552 (Ind.1995). *Clark* held that an appellate court will presume that a trial court's finding of congestion is valid. A defendant may overcome this presumption by demonstrating that the finding of congestion was factually or legally inaccurate. Such proof establishes a prima facie case for discharge unless the trial court sets forth an explanation for congestion. If the trial court provides further findings which explain the congestion and justify the delay, the appellate court will give reasonable deference to the trial court's explanation. The burden then shifts back to the defendant to establish that he is entitled to relief of discharge by showing that the trial court was clearly erroneous. *Id.*

In this case, Defendant presented evidence in support of his motion to dismiss that there were a number of dates on which trials were not held between January 21 and May 27, 1997. (Motion to Dismiss, R. at 96; Br. of Appellant at 11). We find this evidence establishes a prima facie case for discharge.

However, we also find that the trial court provided the requisite further findings explaining the congestion and justifying the delay. The court noted its "policy that a speedy trial is set on the first day available when there is no other speedy trial set." (R. at 286.) The court expressly stated that Defendant's speedy trial was set on the first available speedy trial date, which was May 27, 1997. This accords with *Clark's* mandate that speedy trial requests under Crim. R. 4(B) require "particularized priority treatment" with trial dates superseding those designated for civil cases and criminal cases in which Crim. R. 4 deadlines are not imminent. *Clark*, 659 N.E.2d at 551. The court also explained that from January 1997 to May 1997, cases had been scheduled but were not tried due to "last minute needs for continuance or last minute guilty pleas" which left these days open, and that these open days could not have been anticipated on January 21, the day the court re-scheduled the trial. (R. at 242–43, 286.)

When a trial court's further findings adequately explain the congestion and justify the delay, this Court gives reasonable deference to the trial court's explanation. *Id.* at 552. The burden then shifts to the defendant to show that the trial court was clearly erroneous. *Id.* Here, Defendant makes no additional argument refuting the trial court's further findings. The trial court was not clearly erroneous in that explanation. We conclude that Defendant was not entitled to discharge under Crim. R. 4(B)(1).

### B

Defendant next contends that the State violated Crim. R. 4(C)[4] when it did *not retry* him until May 27, 1997, more than one year from the date of his original trial. However, we have held that Crim. R. 4(C) does not apply to retrials. *Brumfield v. Perry Circuit Court.*, 426 N.E.2d 692, 695 (Ind.1981). The only limitation is a reasonable time. *Id.*

4. Crim. R. 4(C) provides in relevant part:
No person shall be held on recognizance or otherwise to answer a criminal charge for a period in aggregate embracing more than one year from the date the criminal charge against such defendant is filed, or from the date of his arrest on such charge, whichever is later; except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calender.... Any defendant so held shall, on motion, be discharged.

██ The trial court attempted to schedule Defendant's case for September 24, 1996. However, defense counsel requested a trial continuance because of a computer error in the jury polling system. This initial delay is attributable to neither Defendant nor the trial court. The next date for retrial was scheduled for January 21, 1997. However, due to trial court congestion, this case was then rescheduled for May 27, 1997. For reasons discussed in Part 1–A *supra*, we find that this delay was not unreasonable.[5]

## II

██ Defendant makes several arguments to the effect that the trial court was biased and prejudiced against him and his counsel to such an extent that he was entitled to be tried or sentenced by a different judge.[6] The law presumes that a judge is unbiased and unprejudiced. *In re Edwards*, 694 N.E.2d 701, 711 (Ind.1998); *Smith v. State*, 535 N.E.2d 1155, 1157 (Ind. 1989). But when a judge's impartiality might be reasonably questioned because of personal bias against a defendant or counsel, a judge shall disqualify himself or herself from a proceeding. Ind. Judicial Conduct Canon 3(E)(1)(a);[7] *Edwards*, 694

N.E.2d at 710. The test for determining whether a judge should recuse himself or herself under Jud. Canon 3(E)(1) is whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality. *Id.*

Defendant contends that the judge engaged in misconduct in multiple respects, most of which we view as claims not of misconduct but of trial court error. As claims of error, these contentions, to the extent they are not reviewed elsewhere in this opinion, are not sufficiently supported to warrant review. Ind. Appellate Rule 8.3(A)(7). Three of the arguments warrant review as contentions of judicial misconduct.

### A

██ Defendant argues that the trial court judge and the prosecuting attorney engaged in an *ex parte* communication in violation of Jud. Canon 3(B)(8), and that the trial court judge failed to notify him promptly of this alleged *ex parte* communication in violation of Jud. Canon 3(B)(8)(a)(ii).[8]

Generally, the Code of Judicial Conduct prohibits a judge from engaging in *ex*

---

**5.** In his reply brief, Defendant argues that he was denied his federal constitutional right to a speedy trial, citing *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Issues raised for the first time in a reply brief are not available for appellate review. *Ward v. State*, 567 N.E.2d 85 (Ind.1991); App. R. 8.3(A)(3); App. R. 8.3(C). While Defendant claims that he raised the issue in his initial brief, we find that he did not.

**6.** Defendant presents the following errors as three separate issues: (1) whether the trial court erred in denying motion for recusal; (2) whether the trial court erred in denying change of venue; and (3) whether there is evidence of improper court conduct that warrants judicial disqualification under Jud. Canon 3(E)(1). Finding that these alleged errors raise substantially the same question, we address these issues as one.

**7.** Jud. Canon 3(E)(1) provides in relevant part:

A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:
 (a) the judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding.

**8.** Jud. Canon 3(B)(8)(a) provides in pertinent part:

Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:
 (i) the judge reasonably believes that no party will gain a procedural or tactical advantage as a result of the ex parte communication, and,
 (ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

*parte* conversations which relate to pending proceedings. Jud. Canon 3(B)(8); *Bell v. State*, 655 N.E.2d 129, 131 (Ind.Ct.App. 1995). An exception to this general rule is found under Jud. Canon 3(B)(8)(a), which permits *ex parte* communications for scheduling, administrative purposes, or emergencies that do not deal with substantive matters of a pending case. Under this exception, the judge must (1) reasonably believe that no party will gain a procedural or tactical advantage; and (2) promptly notify all other parties of the substance of the *ex parte* communication and allow an opportunity to respond. *Id.*

In the present case, a police officer witness recalled on the eve of retrial that Defendant had confessed to him shortly after the murder. The officer had had no recollection of such a confession during Defendant's first trial. Given the nature of this development, the prosecuting attorney immediately alerted the judge about this new information. The prosecuting attorney told the judge that he would promptly inform defense counsel about the alleged confession, and the prosecutor did so immediately. Relying upon the prosecuting attorney's good faith, the judge found that it was unnecessary to call defense counsel about the alleged confession. The judge stated for the record, "I was satisfied that notice would be had...." (R. at 312.) The judge said that he had not engaged in any substantive discussion concerning the alleged confession.[9] In fact, the judge told the prosecuting attorney that they would talk about the matter the following week when all parties could discuss it together on the record.

We find, as the trial court did, that this *ex parte* communication was either "administrative" in nature or an "emergency" and therefore fell within the exception of Jud. Canon 3(B)(8)(a). We also agree with the trial court determination that under these circumstances, neither party gained

any procedural or tactical advantage as a result of this communication. The trial court did not err in denying Defendant's motion for recusal with regard to the *ex parte* communication.

### B

 Defendant contends that the judge showed prejudice and bias by ordering Defendant to be restrained in a security chair during the sentencing hearing. A defendant has the right to appear in front of the jury without physical restraints, unless such restraints are necessary to maintain security and order in the courtroom. *Avant v. State*, 528 N.E.2d 74, 77 (Ind. 1988) (holding that a trial court judge was justified in ordering a criminal defendant's mouth to be taped shut). Here, after the jury read Defendant's guilty verdict, Defendant said, "I don't appreciate the mother fuckers." (R. at 739.) Based on this conduct, the judge was justified in restraining Defendant for the purposes of maintaining security and order in his courtroom. Furthermore, the judge ordered Defendant in restraints *at the time of sentencing*, not at trial. Given that at no time did the jury observe Defendant in restraints, Defendant suffered no prejudice.

### C

 Defendant also claims that the trial judge displayed personal prejudice and bias against him or his defense counsel when the judge turned off the recording device while defense counsel was speaking. The importance of making a record for appellate review cannot be overemphasized. *Von Almen v. State*, 496 N.E.2d 55, 57 (Ind.1986). Moreover, an appellant has the obligation to make a specific objection and to preserve the record for appeal. *Id.* We therefore take such claims very seriously. Here our review of the record strongly suggests that the trial judge shut

---

9. The trial judge explained that the extent of the communication was "to alert the court of a potential problem," and stated, "I did not respond, I was not asked to and didn't, it would have been inappropriate...." (R. at 306, 312.)

off the recording device only after counsel was given an adequate opportunity to make a record of his objection against sending photo exhibits into the jury room. (R. at 229–32, 236, 734–35.) In any event, Defendant makes no showing whatsoever of any additional argument that the judge prevented defense counsel from presenting or of how he was prejudiced by the judge's actions. Absent such a showing, he is not entitled to relief.

### D

We have also reviewed Defendant's other claims and conclude that the record does not support a rational inference of personal bias or prejudice on the part of the judge. We hold that the trial court was not erroneous in denying Defendant's motions for recusal and change of judge and that the judge was not required to disqualify himself under Jud. Canon 3(E)(1).

### III

■ Defendant contends that the trial court abused its discretion "by not including Defendant's alibi defense in the preliminary instructions." In his initial brief, Defendant gives us no indication of what preliminary instruction he sought, if any. As such this claim is waived. App. R. 8.3(A)(7), para. 2.

■ Defendant also contends that the trial court erred by not submitting "all of the [c]ourt's jury instructions in writing" to the jury. Although Defendant's brief does not set forth the instructions complained of, it appears that he is referring to what the trial court termed "cautionary instructions." These "instructions" covered four points:

(1) That the jury was not to give any consideration of any kind to Defendant's prior trial;

(2) That while the exhibits would be sent to the jury room for use during deliberations, the jury should not give any particular exhibit undue influence

and not allow any particular exhibit to exert undue influence;

(3) That transcripts, witness statements, police reports, and similar materials would not be sent to the jury room; and

(4) That the two alternate jurors were not to involve themselves in deliberations in any way.

(R. at 729–31.)

■ While it would not have been inappropriate to reduce such matters to writing, we think the topics addressed were sufficiently ministerial in nature that the court did not abuse its discretion by reciting them. In any event, we find nothing in the record to suggest that Defendant requested these "cautionary instructions" be reduced in writing. Defense counsel objected to the oral cautionary instructions only after the jury retired for deliberations. Failure to timely object to a jury instruction waives a claim of error on appeal, unless the claim of error rises to the level of fundamental error. *Sanchez v. State*, 675 N.E.2d 306, 308–09 (Ind. 1996); *see also* Ind. Trial Rule 51(C) ("No party may claim as error the giving of an instruction unless he objects thereto *before the jury retires* to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.") (emphasis added). We find that in failing to object timely to the oral "cautionary instructions," Defendant waived such error on appeal. Furthermore, we find no basis for concluding that there was fundamental error in this regard.

Lastly, Defendant argues that the trial court abused its discretion when the court excused "a juror during deliberation." But in fact, the record shows that trial court released an *alternate* juror after deliberations had begun because the juror's wife was ill. As the jury completed deliberations and returned a verdict without the assistance of any alternate jurors, Defendant can show no prejudice.

*Conclusion*

We affirm the trial court's judgment.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.