**Mark O'CONNOR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 91A02–0203–PC–252.

Court of Appeals of Indiana.

June 4, 2003.

---

---

Mark O'Connor, Appellant Pro Se.

Steve Carter, Attorney General of Indiana, Zachary J. Stock, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Mark O'Connor appeals the trial court's denial of his motion to correct erroneous sentence as it relates to his convictions under Cause No. 91D01–9507–CF–94 ("CF–94") and Cause No. 91D01–9507–CF–95 ("CF–95") and the revocation of his probation under Cause No. 91D01–9310–CF–131 ("CF–131"). O'Connor raises two issues, which we restate as:

I. Whether O'Connor was subjected to multiple punishments for the same offense in violation of the prohibition against double jeopardy when he entered into an agreed entry with respect to a forfeiture action and entered into a plea agreement with respect to multiple criminal charges on the same day; and

II. Whether the trial court was biased and prejudiced against O'Connor.

We affirm.

In July of 1995, under CF–94, the State charged O'Connor with three counts of dealing in marijuana as class D felonies,[1] dealing in cocaine as a class B felony,[2] dealing in marijuana as a class A misdemeanor,[3] and being an habitual offender.[4] The State also filed a petition to revoke O'Connor's probation under CF–131.[5] Additionally, under CF–95, the State charged O'Connor with operating a motor vehicle after driving privileges are forfeited for life as a class C felony.[6] On September 25, 1995, the State also filed a complaint for forfeiture and reimbursement of law enforcement costs, requesting forfeiture of a 1976 Chevrolet truck, a 1974 Chevrolet Corvette, a 1984 Chevrolet Blazer, and $3,764.00 in cash.[7] The forfeiture action related to O'Connor's criminal drug charges under CF–94.

---

1. Ind.Code § 35–48–4–10 (1995) (subsequently amended by P.L. 65–1996, § 17, and P.L. 17–2001, § 26).

2. Ind.Code § 35–48–4–1 (1995) (subsequently amended by P.L. 65–1996, § 11, P.L. 17–2001, § 19, and P.L. 17–2001, § 31).

3. I.C. § 35–48–4–10.

4. Ind.Code § 35–50–2–8 (1995) (subsequently amended by P.L. 166–2001, § 3, P.L. 166–2001, § 5, P.L. 291–2001, § 226, and P.L. 291–2001, § 228).

5. Under CF–131, O'Connor was convicted in 1994 of operating a vehicle as an habitual traffic violator as a class D felony. Ind.Code § 9–30–10–16. The trial court sentenced O'Connor to two years imprisonment, with the first year served on monitored house arrest and the second year suspended. The trial court also suspended O'Connor's driving privileges for life.

6. Ind.Code § 9–30–10–17 (1995).

7. For a discussion of forfeiture actions, see Ind.Code § 34–24–1–1 to –9 (formerly Ind. Code § 34–4–30.1–1 to –9 (repealed by P.L. 1–1998, § 221)).

On September 25, 1995, O'Connor entered into an agreement regarding both the forfeiture action and the criminal charges in CF–94, CF–131, and CF–95. According to O'Connor, the plea agreement for the criminal charges was conditioned upon O'Connor also entering into an agreed entry in the forfeiture action. Under the agreed entry: (1) $2,000 was paid to O'Connor and his attorney; (2) $1,764.00 was paid to the White Carroll County Drug Task Force; (3) O'Connor forfeited the 1974 Chevrolet Corvette and the 1984 Chevrolet Blazer; and (4) the State returned the 1976 Chevrolet truck to O'Connor. In CF–94, O'Connor pleaded guilty to three counts of dealing in marijuana as class D felonies, dealing in cocaine as a class B felony, and dealing in marijuana as a class A misdemeanor. O'Connor admitted to violating his probation under CF–131. Lastly, under CF–95, O'Connor pleaded guilty to operating a motor vehicle after driving privileges are forfeited for life as a class C felony.

Under CF–94, the trial court sentenced O'Connor to three years of imprisonment for each count of dealing in marijuana as a class D felony, twenty years for dealing in cocaine as a class B felony, and one year for dealing in marijuana as a class A misdemeanor. The trial court ordered that the sentences be served concurrent with each other, but consecutive to any sentence imposed in CF–131. Under CF–131, the trial court ordered that O'Connor execute the remainder of his original two-year sentence. Under CF–95, the trial court

sentenced O'Connor to eight years in the Indiana Department of Correction with three years suspended and three years of probation. The trial court ordered that the sentence be consecutive to the sentence imposed in CF–94. Consequently, O'Connor received an aggregate sentence of twenty-five years plus the remainder of his two-year sentence for the probation revocation.

On October 6, 1999, O'Connor filed a motion to correct erroneous sentence, which the trial court denied. However, on October 25, 2001, the trial court reconsidered the motion. O'Connor argued that as a result of the forfeiture action and the criminal convictions, he was subjected to double jeopardy. The State argued that the forfeiture action did not constitute punishment for double jeopardy purposes. After a hearing, the trial court again denied O'Connor's motion.

I.

The first issue is whether O'Connor was subjected to multiple punishments for the same offense in violation of the prohibition against double jeopardy when he entered into an agreed entry with respect to a forfeiture action and entered into a plea agreement with respect to multiple criminal charges on the same day. O'Connor argues that he was subjected to multiple punishments in violation of the United States Constitution and the Indiana Constitution [8] because he had already been punished by the forfeiture of his property at the time he pleaded guilty to the crimi-

---

8. Although O'Connor referenced the Indiana Constitution and the double jeopardy analysis contained within our supreme court's opinion in *Richardson v. State*, 717 N.E.2d 32 (Ind. 1999), O'Connor failed to present a separate analysis based upon the Indiana Constitution. Consequently, he waived his claim based upon the Indiana Constitution. *See, e.g., Dye v. State*, 717 N.E.2d 5, 24 (Ind.1999) (holding that the defendant waived his state constitutional claim where he cited the relevant constitutional section without making any separate analysis based on the state constitution), *reh'g denied, cert. denied*, 531 U.S. 957, 121 S.Ct. 379, 148 L.Ed.2d 292 (2000). We decide this case based solely upon the federal double jeopardy clause.

nal offenses.[9] Consequently, O'Connor requests that we vacate his convictions and discharge him from custody. Because the issue is a pure question of law, we conduct a de novo review.[10] *Wilcox v. State,* 748 N.E.2d 906, 909 (Ind.Ct.App.2001), *trans. denied.*

■ The federal double jeopardy clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. "The protection against multiple punishments prohibits the Government from ' "punishing twice, or attempting a second time to punish criminally for the same offense." ' " *U.S. v. Ursery,* 518 U.S. 267, 273, 116 S.Ct. 2135, 2139–2140, 135 L.Ed.2d 549 (1996). Although O'Connor argues that all of his convictions should be vacated, the forfeiture action specifically related only to the criminal charges in CF–94. In the forfeiture complaint, the State alleged that O'Connor used his 1976 Chevrolet truck and 1984 Chevrolet Blazer to facilitate the transportation of marijuana for the purpose of dealing in marijuana. The State alleged that O'Connor used his 1974 Chevrolet Corvette to facilitate the transportation of marijuana and cocaine. When referencing each of the above allegations, as well as the proposed forfeiture of the $3,764.00, the State specifically referred to the criminal charges filed under CF–94. The forfeiture action did not relate to O'Connor's criminal charges filed under CF–95 or the revocation of his probation under CF–131. Consequently, we fail to see how he could have been subjected to multiple punishments for the same offense by the forfeiture action and the convictions under CF–95 or CF–131. As such, we will address only the possible double jeopardy consequences of the forfeiture action and the convictions under CF–94.

O'Connor relies upon *State v. Klein,* 702 N.E.2d 771 (Ind.Ct.App.1998), *trans. denied.* In *Klein,* the State charged the defendant with attempted rape, attempted criminal deviate conduct, criminal deviate conduct, and criminal confinement. *Id.* at 772. Additionally, the State filed a forfeiture action against his car because the vehicle was used "to facilitate the escape from the commission of criminal confinement and/or rape." *Id.* The trial court entered a default judgment in the forfeiture action after the defendant failed to respond to the complaint. *Id.* The State later dismissed the criminal charges and refiled the information adding an additional charge. *Id.* The defendant argued, in part, that further criminal prosecution following the civil forfeiture of his car violat-

---

**9.** Jeopardy attaches once the trial court accepts a defendant's guilty plea. *Zehr v. State,* 662 N.E.2d 668, 669 (Ind.Ct.App.1996). Here, the trial court took O'Connor's guilty pleas under advisement on September 25, 1995 and entered judgments of conviction on October 5, 1995. O'Connor and the State entered into the agreed entry for the forfeiture action on September 25, 1995, and the trial court approved the order on the same day.

**10.** The State argues that a motion to correct erroneous sentence is not the proper vehicle to address O'Connor's claims. According to the State, the use of a motion to correct erroneous sentence is limited to the circumstances where a sentence is erroneous on its face. *See, e.g., Mitchell v. State,* 726 N.E.2d 1228, 1243 (Ind.2000) (holding that a double jeopardy challenge may be argued in a motion to correct sentence where the violation is facially erroneous), *reh'g denied.* Because the alleged punishment resulting from the forfeiture action is not evident on the face of the sentences, the State contends that O'Connor could not utilize a motion to correct erroneous sentence to challenge the alleged double jeopardy violation. However, as O'Connor points out, the State did not make this argument to the trial court. Rather, the State addressed O'Connor's argument on the merits. Consequently, we too will also address his argument on the merits.

ed the prohibition against double jeopardy. *Id.* at 772–773. The trial court agreed and granted the defendant's motion that the charges be dismissed with prejudice. *Id.* at 773.

On appeal, another panel of this court analyzed whether criminal proceedings against the defendant following the civil forfeiture of his car constituted multiple punishments in violation of the federal double jeopardy clause. *Id.* The panel noted that "[t]he United States Supreme Court has held that in rem civil forfeiture actions under 21 U.S.C. § 881 and 18 U.S.C. § 981 do not constitute punishment and, thus, a subsequent criminal prosecution is not barred under the Double Jeopardy Clause of the United States Constitution." *Id.* (citing *Ursery,* 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549). In determining whether the forfeiture is intended as a punishment, the panel discussed a two-part test:

First, we ask whether Congress intended proceedings under [the forfeiture statutes] to be criminal or civil. Second, we turn to consider whether the proceedings are so punitive in fact as to 'persuade us that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature,' despite Congress' intent.

*Id.* (quoting *Ursery,* 518 U.S. at 288, 116 S.Ct. at 2147).

Under the first step, the panel held that the legislature intended the forfeiture statutes to be civil in nature. *Id.* at 774. However, under the second step, the trial court found that "the sanction of taking and forfeiting Klein's vehicle served only the goals of punishment and served no remedial function, such as compensating the government for any loss. Thus, this amounted to jeopardy within the meaning of the Double Jeopardy clauses of the state and federal constitutions." *Id.* The panel agreed, noting that the record did not

indicate that law enforcement was required to engage in a lengthy investigation, that the defendant evaded or attempted to evade the police, or that the defendant put up any resistance when arrested. *Id.* Consequently, the panel held that "as the trial court found, there is no purpose for the forfeiture other than punishment" and jeopardy attached upon the forfeiture of the defendant's vehicle. *Id.* at 774–775.

The State questions the viability of *Klein* and relies upon Justice Sullivan's dissent to the denial of transfer. *See State v. Klein,* 719 N.E.2d 386 (Ind.1999) (dissenting to denial of transfer). In his dissent, Justice Sullivan, with Chief Justice Shepard concurring, disagreed with the panel's analysis of the second step. *Id.* at 387. Specifically, Justice Sullivan noted that the "the Court of Appeals appears to suggest that forfeiture can only be justified if it does no more than compensate the State for the law enforcement resources expended in the investigation." *Id.* In fact, the United States Supreme Court held in *Ursery* that:

Civil forfeitures, in contrast to civil penalties, are designed to do more than simply compensate the Government. Forfeitures serve a variety of purposes, but are designed primarily to confiscate property used in violation of the law, and to require disgorgement of the fruits of illegal conduct. Though it may be possible to quantify the value of the property forfeited, it is virtually impossible to quantify, even approximately, the nonpunitive purposes served by a particular civil forfeiture. Hence, it is practically difficult to determine whether a particular forfeiture bears no rational relationship to the nonpunitive purposes of that forfeiture. Quite simply, the case-by-case balancing test set forth in [*U.S. v. Halper,* 490 U.S. 435, 109 S.Ct. 1892,

104 L.Ed.2d 487 (1989)], in which a court must compare the harm suffered by the Government against the size of the penalty imposed, is inapplicable to civil forfeiture.

*Ursery,* 518 U.S. at 284, 116 S.Ct. at 2145. Moreover, the Supreme Court in *Ursery* set forth additional considerations[11] and held that the forfeitures there were neither punishments nor criminal for purposes of the double jeopardy clause. *Klein,* 719 N.E.2d at 387. Justice Sullivan found "little basis for reaching the opposite result" in *Klein. Id.* at 388. We agree with the State and, like Justice Sullivan, question the viability of *Klein.*

■■■ However, we need not decide this issue today because, notwithstanding *Klein,* we conclude that O'Connor waived his double jeopardy claim by entering into a contemporaneous agreement to plead guilty to the criminal charges and enter into an agreed entry with respect to the forfeiture action. Our supreme court has repeatedly held that a defendant waives his or her claims of a double jeopardy violation by pleading guilty. For example, in *Mapp v. State,* our supreme court held that:

> Plea bargaining is a tool used by both prosecutors and defendants to expedite the trial process. Defendants waive a whole panoply of rights by voluntarily pleading guilty. These include the right to a jury trial, the right against self-incrimination, the right of appeal, and the right to attack collaterally one's plea based on double jeopardy.

770 N.E.2d 332, 334–335 (Ind.2002) (footnote omitted) (citing Ind.Code § 35–35–1–2(a)(2) (1998)); *see also Games v. State,* 743 N.E.2d 1132, 1135 (Ind.2001) ("Defendants who plead guilty to achieve favorable outcomes in the process of bargaining give up a plethora of substantive claims and procedural rights."). Our supreme court has further held that "a defendant with adequate counsel who enters a plea agreement to achieve an advantageous position must keep the bargain. Once the defendant bargains for a reduced charge, he cannot then challenge the sentence on double jeopardy grounds." *Games,* 743 N.E.2d at 1135 (citing *Lutes v. State,* 272 Ind. 699, 704–705, 401 N.E.2d 671, 674 (1980)). Defendants are not permitted to do so because "retaining a benefit while relieving oneself of the burden of the plea agreement 'would operate as a fraud upon the court.'" *Games,* 743 N.E.2d at 1135.

Here, O'Connor contemporaneously entered into the agreed entry regarding the forfeiture action and the plea agreement regarding CF–94, CF–95, and CF–131. O'Connor received a significant benefit by entering into the agreements. For example, as a result of the agreements, the State agreed to dismiss the habitual offender charge and agreed to concurrent sentences in CF–94. Additionally, O'Con-

---

**11.** In *Ursery,* the United States Supreme Court identified several factors to consider in determining whether the forfeiture proceeding is "so punitive in form and effect as to render [it] criminal despite Congress' intent to the contrary." *Ursery,* 518 U.S. at 290, 116 S.Ct. at 2148. Specifically, the Court held that: (1) the forfeiture statutes in question there, "while perhaps having certain punitive aspects, serve important nonpunitive goals;" (2) "it is absolutely clear that in rem civil forfeiture has not historically been regarded as punishment, as we have understood that term under the Double Jeopardy Clause;" (3) there is no requirement in the forfeiture statutes in question that the Government demonstrate scienter in order to establish that the property is subject to forfeiture; (4) although the statutes "may fairly be said to serve the purpose of deterrence, we long have held that this purpose may serve civil as well as criminal goals;" and (5) although the statutes were "tied to criminal activity, ... this fact is insufficient to render the statutes punitive." *Id.* at 290–292, 116 S.Ct. at 2148–2149.

nor was permitted to retain one of the vehicles and $2,000 of the seized funds was paid to O'Connor and his attorney. If we accepted O'Connor's argument, he would be permitted to retain the benefit of the agreed entry while relieving himself of the burden of the contemporaneously executed plea agreement. O'Connor received an advantage through the bargaining and cannot now challenge his convictions based upon double jeopardy. *See, e.g., Mapp,* 770 N.E.2d at 334 (holding that the defendant waived his right to challenge his convictions on double jeopardy grounds when he entered his plea agreement).

## II.

The next issue is whether the trial court demonstrated bias and prejudice against O'Connor. The law presumes that a judge is unbiased and unprejudiced. *James v. State,* 716 N.E.2d 935, 940 (Ind. 1999). When a judge's impartiality might reasonably be questioned because of personal bias against a defendant or counsel, a judge shall disqualify himself or herself from a proceeding. *Id.;* Ind. Judicial Conduct Canon 3(E)(1)(a). The test for determining whether a judge should recuse himself or herself is "whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality." *James,* 716 N.E.2d at 940. The record must show actual bias and prejudice against the defendant before a conviction will be reversed on the ground that the trial judge should have been disqualified. *Flowers v. State,* 738 N.E.2d 1051, 1061 (Ind.2000), *reh'g denied.* Furthermore, a "defendant must show that the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced the defendant's case." *Id.* at 1061. An adverse ruling alone is insufficient to show bias or prejudice. *Id.* at 1060 n. 4.

O'Connor argues that the trial court exhibited bias because: (1) the trial court refused to correct "an obvious constitutional depravation;" (2) the trial court refused to provide findings of fact and conclusions thereon; (3) O'Connor had difficulty in securing records in these actions; and (4) the property seized in the forfeiture action "ended up in the possession of the ... prosecutors and law enforcement." Appellant's Brief at 12. The State failed to respond to O'Connor's argument.

The mere adverse ruling on O'Connor's motion to correct erroneous sentence is insufficient to demonstrate bias. Moreover, O'Connor has failed to establish how the trial court's alleged bias prejudiced his case. Despite a lack of findings of fact and conclusions thereon, we were able to review the trial court's ruling on the double jeopardy issue. Further, despite O'Connor's alleged difficulty in securing records, he has not identified any records that he failed to obtain and has not demonstrated how his case was prejudiced by the difficulty in obtaining those records. As for the possession of O'Connor's seized property by prosecutors and law enforcement officials, we fail to see how this relates to bias or prejudice on the part of the trial judge. Consequently, O'Connor has failed to establish that the trial court judge was biased or that any alleged bias prejudiced his case. *See, e.g., Flowers,* 738 N.E.2d at 1061 (holding that the defendant "made no such showing" that the trial judge's action and demeanor crossed the barrier of impartiality and prejudiced the defendant's case).

For the foregoing reasons, we affirm the trial court's denial of O'Connor's motion to correct erroneous sentence.

Affirmed.

BARNES, J., and RILEY, J., concur.