JAMES ALAN ALCORN II, Appellant-Defendant/Petitioner,
v.
STATE OF INDIANA, Appellee-Plaintiff/Respondent.
No. 81A04-0604-PC-200.
Court of Appeals of Indiana.
September 1, 2006.
ERIC K. KOSELKE, Indianapolis, Indiana, ATTORNEY FOR APPELLANT.
STEVE CARTER, Attorney General of Indiana J.T. WHITEHEAD, Deputy Attorney General, Indianapolis, Indiana, ATTORNEYS FOR APPELLEE

MEMORANDUM DECISION
BAKER, Judge. Page 2>
Appellant-defendant/petitioner James Alan Alcorn II appeals directly from his convictions for Operating a Vehicle While Intoxicated (OWI),[1] a class A misdemeanor, and OWI,[2] a class D felony. Specifically, he argues that there is insufficient evidence supporting his convictions.
Alcorn also appeals from the denial of his petition for post-conviction relief, arguing that the post-conviction court erred in denying his motion for change of judge and in finding that he did not receive the ineffective assistance of trial counsel. Finding sufficient evidence supporting his convictions and finding no other error, we affirm the judgments of the trial and post-conviction courts.

FACTS
On February 28, 2004, at about 2:00 a.m., Deputy James Blacker of the Union County Sheriff's Department was patrolling Nine Mile Road in Union County. Deputy Blacker used his radar gun to determine that a passing vehicle was traveling at seventy-five miles per hour in a zone with a speed limit of fifty miles per hour. Deputy Blacker stopped the vehicle, approached it, and smelled a strong odor of alcohol emanating from the vehicle.
Aside from Alcorn, who had been driving, the vehicle held five passengers. Deputy Blacker could not identify the specific source of the odor of alcohol, but Alcorn admitted to the deputy that he had been drinking. One of the five passengers informed Deputy Blacker that she had not wanted Alcorn to drive because he had been drinking that night. Deputy Blacker wrote Alcorn a speeding ticket, and shortly thereafter, Deputy Travis Weston, also of the Union County Sheriff's Department, arrived at the scene.
Deputy Weston was trained and certified to administer field sobriety tests. When the deputy arrived at the scene, he noticed that Alcorn had red, glassy eyes. Deputy Weston detected the odor of alcohol, though he was initially unable to identify the source of the odor. He asked Alcorn to step out of the vehicle so that he could administer three field sobriety teststhe horizontal gaze nystagmus test, the one leg stand, and the walk and turn test. Alcorn failed all three tests.
After Alcorn failed the tests, Deputy Weston asked him to sit inside the police vehicle, and at that point, the deputy could identify a "very strong odor of alcohol" emanating from Alcorn. Tr. p. 25. Deputy Weston then administered a portable breath test. Although the deputy recorded Alcorn's blood alcohol content (BAC) as .08 percent in the probable cause affidavit, he later testified that he had made a clerical error, inasmuch as the test had actually indicated a BAC of .09 percent. Id. p. 36. Following the breath test and based upon his observations, Deputy Weston concluded that Alcorn was intoxicated.
Deputy Weston then transported Alcorn to the Union County Jail, where Alcorn consented to undergo a chemical test to confirm his blood alcohol level. Deputy Weston was a certified breath test operator and was experienced in the use of the DataMaster breath test. After Alcorn delivered a breath sample, the DataMaster breath test revealed a BAC of .09 percent nearly one hour after Alcorn had been pulled over by Deputy Blacker.[3] Based upon the BAC test results, the odor of alcohol emanating from Alcorn, his red, glassy eyes, and his failure of the field sobriety tests, Deputy Weston arrested Alcorn for OWI.
On March 5, 2004, the State charged Alcorn with class A misdemeanor OWI, two counts of class D felony OWI, and class C misdemeanor OWI. On June 30, 2004, Alcorn waived his right to a jury trial. At Alcorn's bench trial, which took place on February 15, 2005, Alcorn testified that on the night in question, he had consumed six twelve-ounce beers by the time he was stopped by Deputy Blacker at 2:00 a.m. Specifically, Alcorn consumed one beer at each of the following times: 8:00 p.m., 9:15 p.m., sometime between 10:00 and 11:00 p.m., 11:00 p.m., 12:30 a.m., and 1:30 a.m. Tr. p. 72-76. Alcorn left the bar around 2:00 a.m.
Following the bench trial, the trial court convicted Alcorn of all counts in addition to speeding and being a habitual substance offender. On March 18, 2005, the trial court held Alcorn's sentencing hearing and vacated his convictions for class C misdemeanor OWI and one of the two counts of class D felony OWI. The trial court sentenced Alcorn to a total of one and one-half years executed for the class A misdemeanor and remaining class D felony OWI convictions. Additionally, the trial court imposed a three-year executed sentence upon Alcorn for being a habitual substance offender, to be served consecutively to the one and one-half year sentence for the OWI convictions.
On March 31, 2005, Alcorn filed a timely notice of appeal. On June 29, 2005, Alcorn asked this court, pursuant to Indiana Appellate Rule 37, to remand his cause to the trial court for the presentation of additional evidence in support of his direct appeal. On July 8, 2005, we remanded this cause pursuant to Alcorn's petition. Alcorn has now refiled his direct appeal, arguing that there is insufficient evidence supporting his convictions.
On August 8, 2005, Alcorn filed a petition for post-conviction relief, alleging that he had received the ineffective assistance of trial counsel. On that same date, Alcorn moved for a change of judge on his petition, and the post-conviction court denied that motion on September 6, 2005. On February 14, 2006, the post-conviction court held a hearing on Alcorn's petition, and on March 31, 2006, the post-conviction court denied his request for post-conviction relief. Alcorn now appeals.

DISCUSSION AND DECISION

I. Direct Appeal
Alcorn first contends that there is insufficient evidence supporting his OWI convictions. In particular, he argues that the State failed to prove that he was impaired or that he endangered himself or anyone else on the night in question. As we consider this argument, we observe that when reviewing a claim of insufficient evidence, we will neither reweigh the evidence nor judge the credibility of witnesses. Vasquez v. State, 741 N.E.2d 1214, 1216 (Ind. 2001). Rather, we will look to the evidence and the reasonable inferences that may be drawn therefrom that support the verdict and will affirm a conviction if evidence of probative value exists from which a reasonable factfinder could find the defendant guilty beyond a reasonable doubt. Id.
To convict Alcorn of class A misdemeanor OWI, the State was required to prove that he operated a vehicle with a BAC of .08-.15 percent in a manner that endangered a person. I.C. §§ 9-30-5-1, -2. To convict Alcorn of class D felony OWI, the State was required to prove that he operated a vehicle with a BAC of .08-.15 percent and that he had been convicted of another OWI offense within the past five years. I.C. §§ 9-30-5-1, -3.
Alcorn argues that the State failed to establish that he was operating a vehicle with a BAC of at least .08 percent. He also contends that the State failed to prove that he operated the vehicle in a manner that endangered a person.
Our review of the record reveals the following evidence supporting a conclusion that Alcorn was intoxicated: (1) Alcorn had red, glassy eyes; (2) Deputy Weston testified that when he was alone with Alcorn, he could identify the "very strong odor of alcohol coming from his person," tr. p. 21; (3) Alcorn failed three field sobriety tests; (4) a passenger in Alcorn's vehicle told the police officers that she had not wanted Alcorn to drive because she believed that he was intoxicated;[4] (5) the portable breath test administered by Deputy Weston revealed a BAC of .08 or .09; (6) the certified DataMaster breath test conducted at the police station revealed a BAC of .09; and (7) Alcorn testified that he had consumed at least six alcoholic beverages before operating the vehicle. It is readily apparent that this evidence is sufficient to support a conclusion that Alcorn was operating a vehicle while intoxicated. Moreover, this evidence is sufficient to support a conclusion that Alcorn was impaired and, therefore, operating his vehicle in a manner that endangered a person. See Slate v. State, 798 N.E.2d 510, 515-16 (Ind. Ct. App. 2003) (holding that endangerment may be demonstrated by evidence that the defendant's condition or manner of operating vehicle could have endangered any person, including the public or the defendant). Alcorn's arguments regarding evidence presented by other witnesses, explanations for his failure of the field sobriety tests, and evidence questioning the results of the portable breath test and DataMaster testare mere requests for us to reweigh the evidence, which we decline. We conclude, therefore, that there is sufficient evidence supporting Alcorn's OWI convictions.

II. Motion for Change of Judge
Next, Alcorn argues that the post-conviction court erred in denying his motion for change of judge. There is a general presumption that a trial judge is unbiased and unprejudiced. James v. State, 716 N.E.2d 935, 940 (Ind. 1999). That being said, if a judge's impartiality might reasonably be questioned because of personal bias against a defendant or attorney, the judge must disqualify herself from the proceeding. Id.; see also Ind. Judicial Conduct Canon 3(E)(1). The test for determining whether a judge should recuse herself is whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality. James, 716 N.E.2d at 940. To rebut the presumption of impartiality, a defendant must prove that the judge had an actual bias or prejudice that placed him in jeopardy. Massey v. State, 803 N.E.2d 1133, 1139 (Ind. Ct. App. 2004).
Here, in support of his motion Alcorn alleged that the following circumstances supported a rational inference of bias and prejudice: (1) that the judgein presiding over Alcorn's trialhad previously found Alcorn guilty and sentenced him on the convictions; (2) that the judge had previously found Alcorn to be in violation of probation; (3) that the judge is a friend of the prosecuting attorney; and (4) that Alcorn's father had voted as a councilman on issues involving the court's budget.
As to Alcorn's first two allegations, we observe that adverse rulings do not establish bias or prejudice. Harrison v. State, 707 N.E.2d 767, 790 (Ind. 1999). As to Alcorn's remaining allegations regarding his father's political activities and the relationship between the judge and the prosecutor, nothing in the record establishes that these factsif true caused the judge to be biased or prejudiced against Alcorn. To succeed on a motion for change of judge, Alcorn must provide evidence of the judge's conduct or comments, which he has failed to do. Massey v. State, 803 N.E.2d at 1139. We conclude, therefore, that the post-conviction court properly denied Alcorn's motion for change of judge.

III. Post-Conviction Relief
Finally, Alcorn argues that the post-conviction court erred in denying his petition for post-conviction relief. In particular, he contends that he received the ineffective assistance of trial counsel because his trial attorney failed to (1) properly investigate the case and present exculpatory evidence, (2) effectively cross-examine the State's witnesses, and (3) file a motion for change of judge.[5]
As we consider this argument, we observe that the petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5); McCarty v. State, 802 N.E.2d 959, 962 (Ind. Ct. App. 2004), trans. denied. When appealing from the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. Id. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Id. Post-conviction procedures do not afford petitioners with a "super appeal." Richardson v. State, 800 N.E.2d 639, 643 (Ind. Ct. App. 2003), trans. denied. Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based upon grounds enumerated in the post-conviction rules. Id.; see also P-C.R. 1(1).
When evaluating a claim of ineffective assistance of counsel, we apply the two-part test articulated in Strickland v. Washington, 466 U.S. 668 (1984). Pinkins v. State, 799 N.E.2d 1079, 1093 (Ind. Ct. App. 2003), trans. denied. First, the defendant must show that counsel's performance was deficient. Strickland, 446 U.S. at 687. This requires a showing that counsel's representation fell below an objective standard of reasonableness, id. at 688, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed to the defendant by the Sixth and Fourteenth Amendments. See id. at 687. Second, the defendant must show that the deficient performance resulted in prejudice. Id. To establish prejudice, a defendant must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Id.
We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best. Whitener v. State, 696 N.E.2d 40, 42 (Ind. 1998). If a claim of ineffective assistance can be disposed of by analyzing the prejudice prong alone, we will do so. Wentz v. State, 766 N.E.2d 351, 360 (Ind. 2002).
Before addressing the substance of Alcorn's arguments, we observe that his trial attorney conducted vigorous and effective cross-examinations of Deputies Blacker and Weston, eliciting the following testimony: (1) Alcorn was not weaving before being pulled over; (2) Deputy Blacker could not pinpoint the source of the odor of alcohol emanating from the vehicle; (3) the strength of the odor of alcohol is not indicative of the quantity consumed; (4) the gaze nystagmus test would incorrectly identify 23% of the subjects as intoxicated; and (5) the walk and turn test was only accurate 65% of the time. The trial attorney also presented evidence that the field sobriety tests were administered on an uneven surface, that Alcorn recited the alphabet without slurring, that an expert in toxicology estimated Alcorn's BAC to have been .03 to .04 percent at the time of the incident, and that Alcorn did not appear intoxicated to a number of eyewitnesses, including the jail officer and one of Alcorn's passengers.
Alcorn first argues that his trial attorney failed to conduct a proper investigation of the case and to present exculpatory evidence. He contends that his attorney should have called a witness who would have testified that Deputy Weston was known in the community for being dishonest. Initially, we note that the decision to refrain from calling a reputation witness is a tactical one that we will not second guess. Moreover, the post-conviction court properly noted that Deputy Weston's credibility was ascertainable without the reputation testimony and that his testimony regarding Alcorn's BAC was corroborated by the DataMaster test. Finally, we again observe that Alcorn's trial counsel presented a slew of exculpatory evidence, including the expert toxicologist, the jail officer, and one of Alcorn's passengers on the night of the incident. Given these circumstances, we cannot say that Alcorn's trial counsel was ineffective for failing to call the proposed reputation witness.
As to the failure to conduct a proper investigation of the case, Alcorn complains that his attorney failed to interview the State's expert witness, a toxicologist who estimated that Alcorn's BAC was .09 percent at the time of the incident and opined that the method used by Alcorn's expert toxicologist was useless. As noted above, however, Alcorn's trial counsel presented an expert toxicologist who testified that he believed Alcorn's blood alcohol was .03 or .04 percent at the time of the incident. Thus, although it would have been preferable for the attorney to have interviewed the State's toxicologist, he presented opposing scientific evidence that was favorable to Alcorn. Under these circumstances, the post-conviction court properly concluded that trial counsel was not ineffective on this basis.
Additionally, Alcorn argues that trial counsel was ineffective for failing to interview a witness, Nicole Urban, who testified at Alcorn's sentencing hearing. Alcorn's father had testified that Alcorn had quit drinking alcohol, but Urban then testified that Alcorn had, in fact, been using alcohol. The trial court noted this discrepancy in pronouncing Alcorn's sentence. Appellant's App. p. 21. But the trial court found only one aggravating factor Alcorn's criminal history. Id. Thus, even if Alcorn's trial counsel should have interviewed Urban prior to presenting her testimony, Alcorn can show no prejudice as a result of that failure inasmuch as the trial court did not consider Alcorn's alcohol use to be an aggravator. Thus, the post-conviction court properly found that the attorney was not ineffective for this reason.
Alcorn next argues that his trial counsel conducted an ineffective cross-examination of Deputy Weston. Specifically, he contends that his attorney should have impeached the deputy with the National Highway Safety Traffic Administration Manual, which would have allegedly shown that Deputy Weston did not perform the field sobriety tests properly, and should have called an expert witness to refute his testimony. Our review of the record reveals, however, that trial counsel's cross-examination of Deputy Weston yielded testimony that the strength of the odor of alcohol is not indicative of the quantity consumed, that an improperly-performed field sobriety test will yield inaccurate results, that the gaze nystagmus test would incorrectly identify 23% of the subjects as intoxicated, and that the walk and turn test was only accurate 65% of the time. Thus, the cross-examination did, in fact, elicit evidence that called into question the result of the field sobriety tests. We cannot conclude, therefore, that Alcorn received the ineffective assistance of trial counsel based upon the cross-examination of Deputy Weston.
Finally, Alcorn argues that his trial counsel was ineffective for refusing to file a motion for change of judge. After Alcorn informed his trial attorney of his father's political activities and the judge's relationship with the prosecutor, counsel decided not to file a motion for change of judge because he believed filing the motion could negatively affect Alcorn's case. This decision is a tactical one that we will not second guess. Moreover, as noted above, we have concluded that Alcorn's motion for change of judge, albeit at the post-conviction level, was properly denied. Consequently, even if we were to conclude that trial counsel was ineffective for failing to file the motion, Alcorn cannot establish prejudice as a result of that failure. Therefore, the post-conviction court properly concluded that trial counsel was not ineffective on this basis.
The judgments of the trial and post-conviction courts are affirmed. VAIDIK, J., and CRONE, J., concur.
NOTES
[1] Ind. Code §§ 9-30-5-1, -2(b).
[2] I.C. §§ 9-30-5-1, -3.
[3] See Ind. Code § 9-30-6-2(c) (providing that chemical test must be administered within three hours of offense).
[4] Alcorn complains that the passenger's statements were improper and inadmissible hearsay. Alcorn did not object to the admission of this evidence at trial, however, so he has waived this argument on appeal. Tate v. State, 835 N.E.2d 499, 508 (Ind. Ct. App. 2005), trans. denied.
[5] Alcorn also argues for the first time on appeal that his trial counsel was ineffective for failing to withdraw his waiver of trial by jury. He has, therefore, waived this argument by failing to raise it in his petition for post-conviction relief. Walker v. State, 843 N.E.2d 50, 58 n.2 (Ind. Ct. App. 2006) (holding that issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal), trans. denied.