# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 09 2018, 9:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Bruce K. Pond, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 9, 2018 <br><br> Court of Appeals Case No. 90A02-1709-PC-2226 <br><br> Appeal from the Wells Circuit Court <br><br> The Honorable Kenton W. Kiracofe, Judge <br><br> Trial Court Cause No. 90C01-1309-PC-6 |

**Barnes, Judge.**

# Case Summary

Bruce Pond appeals the post-conviction court's denial of his petition for post-conviction relief. We affirm.

# Issues

Pond raises eight issues, which we consolidate and restate as:

I.      whether the post-conviction court properly denied his motion for change of judge;

II.     whether the post-conviction court properly denied his motion for finding of reckless mens rea;

III.    whether the post-conviction court properly excluded certain evidence;

IV.    whether the post-conviction court properly denied Pond's claim of ineffective assistance of trial counsel; and

V.     whether the post-conviction court properly denied Pond's claim of ineffective assistance of appellate counsel.

# Facts

The facts, as stated in Pond's direct appeal, follow:

> On July 22, 2011, Pond was drinking beer with his son Blake and a family friend on the back porch of his mother's house in Ossian, Indiana. Pond became annoyed with a light shining from the pier of a neighboring pond. Matt Michuda (Michuda) along with his four year old son Jacob and two friends were fishing off the pier. Pond went inside the house, obtained a .22

caliber rifle, and fired two shots toward the area where the light was shining. One of the shots hit Jacob in the right temple. Jacob cried for his father who picked him up and carried him back to Michuda's nearby home. An ambulance arrived and took Jacob to a hospital where he was later pronounced dead.

Officers arrived at the scene in the early morning hours of July 23, 2011. After interviewing Matt's friends, officers learned that the shots had come from Pond's mother's home. Officers contacted Pond, Blake, and the family friend and all three came to the police station where they were interviewed. Each one denied knowing anything about the shooting. In particular, Pond denied possessing any guns. However, later that day, Pond's friend called the police to change his story and admitted that Pond had shot the rifle and that Blake had hid it before the officers arrived. After executing a search warrant, the officers located the rifle behind a barn on Pond's mother's property. Blake also later admitted that Pond had fired the shots and instructed him to hide the rifle behind the barn. Pond was arrested later that day and upon learning that Jacob had died admitted to possessing the rifle and firing the shots.

On July 25, 2011, the State filed an Information charging Pond with Count I, reckless homicide, a Class C felony, I.C. § 35-42-1-5 and Count II, unlawful possession of a firearm by a domestic batterer, a Class A misdemeanor, I.C. § 35-47-4-6(a). On August 2, 2011, the State filed an Amended Information amending Count I to murder, a felony, I.C. § 35-42-1-1(1).

On December 16, 2011, the State filed an additional Information, charging Pond with Count III, voluntary manslaughter, a Class A felony, I.C. § 35-42-1-3(a). That same day, Pond entered into a plea agreement with the State in which he agreed to plead guilty to Count III in exchange for the State's dismissal of Counts I and II as well as a charge of invasion of privacy in a separate case. The State also agreed to obtain written confirmation from

the United States Attorney's Office that federal charges would not be brought against Pond for unlawful possession of a firearm. The plea agreement left Pond's sentence to the trial court's discretion, but capped the sentence at forty years. The trial court accepted Pond's plea agreement and scheduled a sentencing hearing.

On January 17, 2012, the trial court conducted the sentencing hearing. The State argued that the following factors justified aggravating Pond's sentence: the harm suffered by Jacob was greater than the elements required to prove the offense; Jacob's age; Pond's criminal history and probationary status at the time of the crime; and his failure to cooperate with law enforcement. Pond argued that his prior offenses were dissimilar and minor in comparison to the instant offense, that the State and Jacob's family benefitted from his guilty plea, and that he was remorseful. Although finding that Pond had no intent to kill Jacob, the trial court concluded that the mitigating factors advanced by Pond were of little or no weight while the aggravating factors were sufficiently supported and outweighed the mitigating factors. As a result, the trial court sentenced Pond to forty years of incarceration and ordered him to pay $9,958.64 as restitution, which was later amended to $9,800.44.

*Pond v. State*, No. 90A05-1202-CR-73, slip op. at 2-4 (Ind. Ct. App. Sept. 19, 2012), *trans. denied*.

[4]     Pond appealed his sentence, arguing that the trial court abused its discretion when it sentenced him and that the trial court erred when it ordered him to pay restitution. We found no abuse of discretion and affirmed Pond's forty-year sentence. We also found no error in the restitution order. Our supreme court denied transfer.

[5] Pond filed a petition for post-conviction relief on September 13, 2013, and he filed a motion for change of judge on September 23, 2013, with a supporting affidavit. After a hearing, the post-conviction court denied the motion for change of judge. Pond then filed two amended petitions for post-conviction relief alleging ineffective assistance of trial counsel and appellate counsel. In July 2016, Pond filed a second motion for change of judge, which the post-conviction court denied. Pond also filed a "Motion for Finding of Reckless Mens Rea Due to State's Concession in Brief of Appellee," which the post-conviction court also denied. Appellant's App. Vol. III p. 71.

[6] At the evidentiary hearing, the post-conviction court excluded certain evidence offered by Pond, including the curriculum vitae ("CV") and report of a ballistics expert, the CV and testimony of a crime scene reconstruction expert, and Pond's DOC mental health records. The post-conviction court also excluded the CV and report of a toxicologist. The post-conviction court entered findings of fact and conclusions thereon denying Pond's amended petition for post-conviction relief. Pond filed a motion to correct error, arguing that he was entitled to a change of judge for two additional reasons. The post-conviction court denied the motion, and Pond now appeals.

## Analysis

[7] Pond appeals the post-conviction court's denial of his petition for post-conviction relief. A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. *Pruitt v. State*, 903 N.E.2d 899, 905 (Ind. 2009) (citing Ind. Post-Conviction

Rule 1(6)). "The findings must be supported by facts and the conclusions must be supported by the law." *Id.* Our review on appeal is limited to these findings and conclusions. *Id.* Because the petitioner bears the burden of proof in the post-conviction court, an unsuccessful petitioner appeals from a negative judgment. *Id.* (citing P-C.R. 1(5)). "A petitioner appealing from a negative judgment must show that the evidence as a whole 'leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.'" *Id.* (quoting *Allen v. State*, 749 N.E.2d 1158, 1164 (Ind. 2001), *cert. denied*). Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion." *Id.*

## I. Motion for Change of Judge

Pond argues that the post-conviction court erred by denying his motions for change of judge. Indiana Post-Conviction Rule 1(4)(b) provides:

> Within ten [10] days of filing a petition for post-conviction relief under this rule, the petitioner may request a change of judge by filing an affidavit that the judge has a personal bias or prejudice against the petitioner. The petitioner's affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. A change of judge shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice. For good cause shown, the petitioner may be permitted to file the affidavit after the ten [10] day period.

[9] The rule "requires the judge to examine the affidavit, treat the historical facts recited in the affidavit as true, and determine whether these facts support a rational inference of bias or prejudice." *Lambert v. State*, 743 N.E.2d 719, 728 (Ind. 2001) (quoting *State ex rel. Whitehead v. Madison County Cir. Ct.*, 626 N.E.2d 802, 803 (Ind. 1993)), *cert. denied*. A change of judge is neither "automatic" nor "discretionary;" rather, it requires a legal determination by the trial court. *Id.* We presume that a judge is not biased against a party. *Id.* Under the rule, the post-conviction court is disqualified from hearing a case only if the judge holds "a personal bias or prejudice." Ind. Post-Conviction Rule 1(4)(b). "Typically, a bias is 'personal' if it stems from an extrajudicial source—meaning a source separate from the evidence and argument presented at the proceedings." *Id.* The court's adverse rulings on judicial matters do not indicate a personal bias toward a defendant. *Harrison v. State*, 707 N.E.2d 767, 790 (Ind. 1999), *cert. denied*.

[10] Pond filed two motions for change of judge in the post-conviction proceedings. The first motion was filed ten days after his petition for post-conviction relief was filed. The second motion was filed in July 2016. In the first motion, Pond raised several allegations that he was entitled to a change of judge. In the second motion, Pond raised additional allegations. After the post-conviction court entered findings of fact and conclusions thereon denying Pond's petition for post-conviction relief, Pond filed a motion to correct error raising additional arguments that he was entitled to a change of judge. On appeal, Pond argues that he was entitled to a change of judge because: (1) the judge was involved, as

a deputy prosecutor, in prior criminal prosecutions of Pond and used those convictions as aggravators in this case; (2) the judge made "baseless findings that Pond's post-conviction counsel presented false evidence" and granted the State's "motions before Pond had an opportunity to respond;" (3) the judge displayed emotion during sentencing and said that the case made him sick; (4) the judge refused to consider evidence regarding Pond's character and background at sentencing and post-conviction hearings; (5) the judge has a "personal connection" to the victim's grandparents; (6) the judge had a professional relationship with the former and current prosecuting attorneys; and (7) the judge made comments during the post-conviction proceedings about "riffraff."[1] Appellant's Br. pp. 33-34.

[11] Pond first argues that he was entitled to a change of judge because the judge was the deputy prosecutor in two other criminal cases against Pond, and Pond pled guilty to misdemeanor battery in both of those cases. Pond acknowledges that this is not a basis for automatic recusal. However, relying on *Dishman v. State*, 525 N.E.2d 284, 285 (Ind. 1988), he argues that recusal is required if "there is any factual dispute concerning the prior cases." Appellant's Br. p. 35. Pond does not explain what the factual dispute is regarding the prior battery

---

[1] Pond also argues the post-conviction court used an incorrect legal standard in ruling on his motion for change of judge. Pond argues only that "the court found that some of the facts, in Pond's affidavit and change of judge motion, were 'inaccurate,' 'false,' and/or 'misleading.'" Appellant's Br. p. 34. Pond fails to identify which facts were found inaccurate, false, and/or misleading and fails to include any other explanation in his argument. Pond has waived this argument by failing to provide cogent reasoning. *See* Ind. Appellate Rule 46(A)(8)(a).

cases. In both cases, Pond pled guilty. He attempted to minimize his conduct during the sentencing hearing in this case; the fact remains, though, that Pond pled guilty in those cases. There is no factual dispute that would have warranted the judge's recusal here.

[12] Next, Pond argues that the judge made "baseless" allegations against his post-conviction counsel that she presented false evidence. Appellant's Br. p. 36. In support of this argument, Pond relies upon findings that the post-conviction court made in the denial of the first motion for change of judge and in the order denying the petition for post-conviction relief. Pond raised this issue in his motion to correct error. Pond also contends that the post-conviction court granted two of the State's motions before his counsel could respond. In both orders, the post-conviction court pointed out statements by Pond's counsel that it considered misleading. These arguments do not demonstrate that the post-conviction court was biased against Pond. Rather, these orders are in the nature of an adverse ruling on a judicial matter.

[13] Next, Pond argues that he was entitled to a change of judge because the judge wiped tears from his eyes when the victim's mother made a statement during the sentencing hearing and because the judge said during the sentencing hearing that the case made him "sick to [his] stomach." Exhibits Vol. V p. 24 (Ex. 1B p. 60). The fact that a judge uses "emotional language" in describing a defendant's character and crime does not demonstrate personal bias or prejudice outside of the judicial function. *Lambert*, 743 N.E.2d at 729. Moreover, "[t]he mere fact a judge cries does not, in itself, demonstrate bias or

prejudice." *Cook v. State*, 612 N.E.2d 1085, 1088 (Ind. Ct. App. 1993). Trial court judges are not required to be emotionless. Pond failed to demonstrate that he was entitled to a change of judge on this basis.

[14]    Next, Pond argues he was entitled to a change of judge because the judge "explicitly refused to consider almost all of the evidence that was submitted on Pond's behalf at sentencing." Appellant's Br. p. 41. Specifically, several people submitted letters on Pond's behalf for sentencing. Regarding those letters, the trial court stated:

> The Court also notes several letters filed with the presentence investigation report by family and friends of Mr. Pond's. I note what appears to me to be only three of those letters were written by someone who actually knew Mr. Pond prior to this tragic event, those remaining letters are well meaning, but I think it's hard to assess someone's character when they have known them for less than six months and that Mr. Pond was incarcerated for that period of time that they have known him, so I place little weight on those letters. I think they speak to who he is today, but not maybe who [he] was on July 23rd. Of the letters that knew Mr. Pond prior to July 23rd [the] first letter talks about, one of his friends, Robert Levitz indicates that, basically says that he is compelled to ask for his, plead for Mr. Pond's innocence. That response in the letter makes me think he either doesn't believe what happened or completely misunderstands the actions of Mr. Pond, so I place little weight on that letter. The second letter is from Mr. Pond's fiancé or girlfriend who describes him in the letter as a good person and she testified that way today despite the fact that she is a victim of an Allen County conviction for domestic violence at the hands of Mr. Pond. Ms. Klepper must, might find it however she wants, but the fact of the matter is Defendant pled guilty to that crime. She may wish to minimize it, but he pled guilty to that. So either he lied when he

> pled guilty to it or something, I don't know, but it happened and he was convicted of it. Last letter is written by his son, Blake Pond who calls, describes or characterizes this incident as an accident.

Exhibits Vol. V pp. 21-22 (Ex. 1B pp. 57-58). It is incorrect to suggest that the judge refused to consider the letters; rather, the trial court assigned little weight to them, which was within the trial court's prerogative. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind. 2007) ("The relative weight or value assignable to reasons properly found or those which should have been found is not subject to review for abuse."), *clarified on reh'g*, 875 N.E.2d 218 (Ind. 2007). The trial court assigning little weight to letters submitted on Pond's behalf does not demonstrate personal bias or prejudice; rather, it is in the nature of an adverse ruling, which does not indicate a personal bias. *Harrison*, 707 N.E.2d at 790. Pond's argument fails.

[15]  Next, Pond argues that the judge had a personal connection to the victim's grandparents. The judge disclosed during the underlying proceedings that he attended the same church as the victim's grandfather and that he sporadically participated in an organization with the victim's grandfather. The judge noted that he was not "social friends" with the victim's grandfather and that he did not believe an issue of impartiality arose. The parties did not object to the judge presiding over the criminal case. During the post-conviction proceedings, Pond raised the issue in his motion for change of judge. Our courts have held that a judge is not necessarily disqualified because of social relationships with the victim or victim's family. *See, e.g., Simmons v. State,* 504 N.E.2d 575, 581 (Ind.

1987) (holding that a change of judge was not required where the judge was a friend of the victim's father because they were both members of the bar); *Bixler v. State*, 471 N.E.2d 1093, 1100-1101 (Ind. 1984) (holding that a change of judge was not mandated where the judge went to the same church as the victim's family and had prepared a will for the stepfather of the victim's mother), *cert. denied*; *McKinney v. State*, 873 N.E.2d 630, 640 (Ind. Ct. App. 2007) (holding that the defendant failed to demonstrate bias or prejudice where the victim's mother was a former employee of the judge), *trans. denied*. Here, Pond demonstrated only that the judge was a member of the same church as the victim's grandfather and that they were involved in the same organization. Pond has failed to demonstrate the type of relationship that would have required recusal.

[16] Next, Pond argues that the judge had a professional relationship with the former and current prosecutors. Specifically, the former prosecutor, who prosecuted the case at the trial level and at the beginning of the post-conviction proceedings, was the judge's former employer, and they had been partners at a private law firm. The current prosecutor was the judge's co-worker at the prosecutor's office, and they had been partners at a private law firm. Pond concedes that "[a] judge's former professional associations with a prosecuting attorney are not automatic grounds for recusal." Appellant's Br. p. 47. However, he contends that the additional relationships as partners in a private firm differentiates this case. We disagree. Pond has failed to cite any authority or facts that suggest the judge's former business relationships with the former

and current prosecutors demonstrate a personal bias or prejudice against the petitioner. *See, e.g., Broome v. State*, 687 N.E.2d 590, 596-97 (Ind. Ct. App. 1997) (holding that the defendant was not entitled to a change of judge where the judge, as a former prosecutor, hired, trained and supervised the prosecutor on the defendant's case), *summarily affirmed in relevant part by Broome v. State*, 694 N.E.2d 280, 281 (Ind. 1998).

[17] Finally, Pond argues that the judge made off-the-record comments after one of the post-conviction hearings regarding "riffraff" at a local street fair and having individuals with outstanding warrants arrested at the street fair. Appellant's Br. p. 48. According to Pond, these comments would "cause an objectively reasonable person to believe that the court sees criminal defendants . . . as 'riffraff' who need to be kept out of Wells County." *Id.* Pond made this argument in his motion to correct error, which the post-conviction court denied. "Expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality." *Rondeau v. State*, 48 N.E.3d 907, 913 (Ind. Ct. App. 2016), *trans. denied*. The comments did not specifically reference Pond or the case at issue. The fact that the judge expressed annoyance at people with criminal histories and active arrest warrants attending the street fair does not establish that the judge had a personal bias or prejudice against the petitioner. *See, e.g., Matheney v. State*, 688 N.E.2d 883, 897 (Ind. 1997) ("The articulation of observations by one judge to fellow judges concerning what the former perceives to be a trend on the part of defendants or post-conviction petitioners does not indicate bias."), *cert. denied*.

## II. *Motion for Finding of Reckless Mens Rea*

[18]   During the post-conviction proceedings, Pond filed a "Motion for Finding of Reckless Mens Rea Due to State's Concession in Brief of Appellee." In the motion, Pond argued that, on direct appeal, the State described the shooting as a "reckless act" in its Appellee's Brief and that the statement "constitutes a judicial admission which is conclusive on the State." Appellant's App. Vol. III p. 71. Pond requested that the post-conviction court "make a factual finding that Pond acted with a reckless mental state, and not a knowing or intentional mental state." *Id.* In response to the motion, the post-conviction court found:

> Mr. Pond raised in the—raised three issues with the Court of Appeals, which the Court of Appeals consolidated into—or restated into two: one, issue of restitution, which this doesn't reflect; and then the other being whether or not the Court—trial court—abused its discretion in sentencing. Um—the defendant's conviction came following a plea of guilty. His mens rea was established in the—um—plea, and in his admission to the factual basis at that time. The—as I have read the—um—one page of the context portion of the—um — it would be the—uh— appellee's brief, it is not discussing his mens rea, and it was not an issue on appeal so I don't believe that it's—um—a key point— uh—to address his culpability because that was already—it was not an issue on appeal, and was—um—had been decided at the trial court, but not raised at the appellate level. So I'm going to overrule and deny the defend—or the petitioner's Motion for Finding of Reckless Mens Rea Due to Concession Brief of Appellee.

Tr. Vol. II p. 62.

On appeal, Pond contends that the State was bound by the "concession" found in its direct appeal Appellee's Brief and that "Pond should have been relieved of the burden of proving he acted recklessly." Appellant's Brief p. 49. We begin by noting the purpose of post-conviction proceedings. Indiana Post-Conviction Rule 1(1)(a) provides:

> Any person who has been convicted of, or sentenced for, a crime by a court of this state, and who claims:
>
> (1) that the conviction or the sentence was in violation of the Constitution of the United States or the constitution or laws of this state;
>
> (2) that the court was without jurisdiction to impose sentence;
>
> (3) that the sentence exceeds the maximum authorized by law, or is otherwise erroneous;
>
> (4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
>
> (5) that his sentence has expired, his probation, parole or conditional release unlawfully revoked, or he is otherwise unlawfully held in custody or other restraint;
>
> (6) that the conviction or sentence is otherwise subject to collateral attack upon any ground of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding, or remedy;

may institute at any time a proceeding under this Rule to secure relief.

It is unclear how Pond's motion fits within any of these conditions, and Pond has not clarified this matter.

[20] Moreover, even if we address this issue, Pond's argument fails. "[A] clear and unequivocal admission of fact, or a formal stipulation that concedes any element of a claim or defense, is a binding judicial admission." *Bandini v. Bandini*, 935 N.E.2d 253, 265 (Ind. Ct. App. 2010). "To constitute a judicial admission, the attorney must make 'a clear admission of a material fact.'" *Saylor v. State*, 55 N.E.3d 354, 363 (Ind. Ct. App. 2016) (quoting 32 *C.J.S. Evidence* § 599 (2008)), *trans. denied*. "'Improvident or erroneous statements or admissions' resulting from 'unguarded expressions or mistake or mere casual remarks, statements[,] or conversations' are not judicial admissions." *Id.* (quoting *Collins v. State*, 174 Ind. App. 116, 366 N.E.2d 229, 232 (1977)). "'[B]efore a statement by an attorney can be held to be [a judicial] admission it must be given a meaning consistent with the context in which it is found.'" *Id.* (quoting 32 *C.J.S., supra*, § 599).

[21] In addressing Pond's direct appeal sentencing argument, the State described the nature of Pond's offense and stated, "Pond did not take responsibility for his reckless act." Appellant's App. Vol. III p. 73. We do not consider this statement, which was made in the context of addressing a sentencing argument on direct appeal, to be a clear admission of material fact in the context of these post-conviction proceedings. The State was addressing Pond's sentencing

argument after he pled guilty to voluntary manslaughter. Pond's mens rea had already been conclusively established by his guilty plea. Pond's mens rea was not, and could not have been, an issue in his direct appeal. The State's statement was merely part of an argument addressing Pond's sentence, not a concession that Pond should have been convicted of reckless homicide rather than voluntary manslaughter as provided in his guilty plea. *See, e.g., Bandini*, 935 N.E.2d at 266 (holding that a statement of wife's counsel was not an unequivocal admission but was part of an argument that husband was aware of the decree and his waiver of retirement pay post-dated the decree). The post-conviction court properly denied Pond's motion.

### III. Exclusion of Evidence

[22] Next, Pond argues that the post-conviction court erred by excluding certain evidence from the post-conviction hearing. Specifically, Pond argues that the following evidence should have been admitted: (1) the report and CV of Arthur Borchers, an expert in ballistics; (2) the testimony and CV of Stephen Neese, a crime scene reconstruction expert; (3) Pond's DOC mental health records from after the sentencing hearing; and (4) the report and CV of Daniel McCoy, a toxicologist. "A petitioner is entitled to present evidence on his behalf during post-conviction proceedings." *Diaz v. State*, 934 N.E.2d 1089, 1093 (Ind. 2010). Indiana Post-Conviction Rule 1(5) provides in relevant part that "[t]he court may receive affidavits, depositions, oral testimony, or other evidence . . . ." However, the petitioner "must comply with the established rules of procedure and evidence to assure both fairness and reliability in the ascertainment of guilt

and innocence." *Diaz*, 934 N.E.2d at 1093. As the admission or exclusion of evidence is within the post-conviction court's sound discretion, we defer to that court and will not disturb its ruling on review unless it has abused its discretion. *Badelle v. State*, 754 N.E.2d 510, 521 (Ind. Ct. App. 2001), *trans. denied*. Further, "[e]rrors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party." *Barnhart v. State*, 15 N.E.3d 138, 143 (Ind. Ct. App. 2014).

### A. Ballistics and Crime Scene Reconstructionist Evidence

[23] We first address the post-conviction court's exclusion of Borchers's report and CV and Neese's testimony and CV. Borchers is a ballistics expert who analyzed "the probable trajectory of the bullet and the degree of bullet drop." Appellant's Br. p. 54. Neese is an accident reconstructionist who analyzed the lighting conditions and bullet trajectory. The State objected on the basis that the evidence was not relevant. Pond argued that the evidence was relevant to show that his trial counsel failed to perform an adequate investigation before advising him to plead guilty. According to Pond, the evidence was relevant to his mens rea and a determination of whether voluntary manslaughter or reckless homicide was the proper charge. The post-conviction court determined that the evidence was not relevant.

[24] We conclude that, even if the post-conviction court should have admitted the evidence at the post-conviction hearing, any error is harmless. This evidence relates to Pond's allegation of ineffective assistance of trial counsel for counsel's alleged failure to conduct a proper investigation. According to Pond, his trial

counsel should have consulted a ballistics expert and a crime scene reconstruction expert before advising Pond regarding the guilty plea.

[25] At the time of Pond's offense, Indiana Code Section 35-42-1-3(a) provided: "A person who knowingly or intentionally . . . kills another human being . . . while acting under sudden heat commits voluntary manslaughter, a Class B felony. However, the offense is a Class A felony if it is committed by means of a deadly weapon." "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b). On the other hand, Indiana Code Section 35-42-1-5 provided: "A person who recklessly kills another human being commits reckless homicide, a Class C felony." "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." I.C. § 35-41-2-2(c).

[26] Pond implies that the experts would have demonstrated that, based on the lighting and bullet drop data, Pond was not aiming at people when he shot his weapon. However, before Pond pled guilty, his trial counsel discussed the weaknesses of the State's case with Pond, specifically focusing on the mens rea element. He made Pond aware that a more appropriate charge would have been reckless homicide. Despite his knowledge that mens rea was a significant issue in the case, Pond weighed his options and pled guilty to voluntary manslaughter in exchange for the dismissal of other charges. Pond's trial counsel testified that he believed that he discussed with Pond the possibility of

needing a reconstructionist and a ballistics expert. At the time of the guilty plea, he had not moved forward with retaining such experts, but he had not ruled out retaining them either. When Pond pled guilty, the need for further investigation and hiring of experts was made unnecessary. We conclude, *infra* Issue IV(B), that trial counsel's performance related to the ballistics expert and crime scene reconstruction expert was not deficient. Even if the post-conviction court had admitted the evidence, the evidence would not have made Pond's claim of ineffective assistance of counsel successful. Pond has failed to demonstrate that any error in the post-conviction court's exclusion of this evidence affected his substantial rights.

## B. Toxicologist

[27] Next, Pond argues that the post-conviction court erred by excluding the CV and report of Daniel McCoy. McCoy is a toxicologist and analyzed Pond's possible blood alcohol content based on whether he weighed 290 pounds or 350 pounds and whether he had three beers or 5.5 beers between 7:00 p.m. and 11:00 p.m. McCoy opined: "It is unlikely that Mr. Pond would have been intoxicated or impaired at the time he fired his rifle." Exhibits Vol. VII p. 114 (Petitioner's Exhibit 29 p. 2). Pond argues that this evidence was relevant because his substance abuse and drinking on the night of the offense was used as an aggravator during sentencing. Pond argues that his trial counsel should have investigated his intoxication level to present evidence during sentencing that he was not intoxicated.

[28] It is undisputed that Pond was drinking alcohol on the evening of the offense and that he had prior convictions that related to substance abuse. The trial court's only mention of Pond's substance abuse during the sentencing statement follows:

> The Court finds the criminal history of the Defendant shows what I would call an acceleration of violent or reckless behavior. There is a history of substance abuse laced throughout his criminal history and I think substance abuse played a factor into this night as well although he testified today that he was not intoxicated and I think his criminal history also and also the violations of probation show a continued disregard for the rule of law.

Exhibits Vol. IV p. 57. There was varying evidence found during the investigation of the amount of alcohol consumed by Pond. McCoy's report concerns Pond's intoxication level at the time of the offense based on Pond's claims of how much alcohol he consumed. However, his intoxication level simply was not found to be an aggravating circumstance. Rather, in the context of discussing Pond's criminal history, the trial court noted that Pond had several substance abuse convictions and that substance abuse may have "played a factor" in the current offense too. *Id.* Pond has failed to demonstrate that the opinion of a toxicologist on his intoxication level was relevant to whether his trial counsel's performance was effective.

[29] Moreover, the post-conviction court found that evidence from a toxicologist would have been irrelevant and possibly harmful to Pond's sentencing. First, the post-conviction court noted that, if Pond was proven to be sober, "it means

Pond's actions on the date in question were completely unaffected by alcohol, and he was fully aware of what he was doing; almost becoming an aggravating factor." Appellant's App. Vol. IV p. 15. Further, the post-conviction court noted that the toxicologist's findings were based on Pond's testimony as to how much alcohol he consumed, which conflicted with other evidence presented. Pond has failed to demonstrate that any error in the post-conviction court's exclusion of this evidence affected his substantial rights.

### C. Mental Health Records

[30] Next, Pond argues that the post-conviction court erred by excluding his DOC mental health records. According to Pond, the records would have demonstrated that his trial counsel should have arranged a mental health evaluation prior to sentencing. Pond contends that he was later diagnosed with post-traumatic stress disorder and depression as a result of Jacob's death. This evidence would tend to show Pond's remorse. However, Pond presented several witnesses at the sentencing hearing who testified regarding his remorse, and Pond himself testified regarding his remorse. Any error in the exclusion of this evidence is harmless given the cumulative evidence of Pond's remorse.

### IV. Ineffective Assistance of Trial Counsel

[31] Pond appeals the post-conviction court's denial of his claim of ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the

deficient performance. *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), *cert. denied*.

[32] A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *McCullough v. State*, 973 N.E.2d 62, 74 (Ind. Ct. App. 2012), *trans. denied*. "[A] defendant must offer strong and convincing evidence to overcome this presumption." *Id.* Isolated poor strategy, inexperience, or bad tactics does not necessarily constitute ineffective assistance. *Id.*

[33] In analyzing prejudice in the context of a guilty plea, we review such ineffective assistance of counsel claims under *Segura v. State*, 749 N.E.2d 496 (Ind. 2001). *Segura* created two categories of claims and enunciated different treatments of each respective category, depending upon whether the ineffective assistance allegation related to (1) an unutilized defense or failure to mitigate a penalty, or (2) an improper advisement of penal consequences. *Willoughby v. State*, 792 N.E.2d 560, 563 (Ind. Ct. App. 2003) (citing *Segura*, 749 N.E.2d at 507), *trans. denied*.

[34] Here, Pond claims that his trial counsel was ineffective by: (1) failing to advise Pond that the evidence supported a finding of reckless homicide, not voluntary

manslaughter; (2) failing to properly investigate and consult qualified experts; (3) failing to move for a change of judge; and (4) failing to investigate and consult with experts in the context of the sentencing hearing. Each of Pond's arguments fall under the first category of unutilized defense or failure to mitigate a penalty. "A petitioner alleging ineffective assistance of counsel in overlooking a defense leading to a guilty plea must show a reasonable probability that, had the defense been raised, the petitioner would not have pleaded guilty and would have succeeded at trial." *Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). We will address each of Pond's arguments separately.

### *A. Failure to Advise Regarding Mens Rea*

[35] Pond first argues that his trial counsel was ineffective for failing to advise him that the evidence supported a finding of reckless homicide rather than voluntary manslaughter. According to Pond, "[t]he overwhelming weight of the evidence indicates Pond acted recklessly, not knowingly." Appellant's Br. p. 65. Pond contends that his trial counsel failed "to advise him that the evidence showed a reckless killing." *Id.* at 66.

[36] The post-conviction court rejected Pond's argument and found, in part:

> g. Here, the evidence indicates that while seated outside, Pond observed a light coming from a neighboring property. According to the witness, he became fixated on the light and became frustrated with the light, and said something about the light pissing him off because they were being nosy. Pond said he would like that they not shine the light in his direction. Ex. 22. P. 26-32 & Ex. 42, p. 20-24. Pond then got up from the table, went into the

house, and returned with a .22 rifle. He then fired the rifle across the Michuda property, in the direction where the light had been. He then fired a second shot. Pond then says something to the effect of "that will teach them." Ex. 22, p. 34-44, emphasis added.

h. Pond was experienced with firearms, and had purchased the .22 rifle despite the prohibition placed on him by reason of his domestic battery conviction. Pond had sighted the rifle, and used it to shoot birds in his mother's backyard. Therefore, Pond was certainly aware the rifle was a deadly weapon capable of causing severe injury or death the moment he pulled the trigger.

i. Pond's attorney discussed with him all possible scenarios; specifically: going to trial on the murder and arguing for a lesser included offense, pleading guilty without the benefit of a plea, or pleading guilty in exchange that certain offenses would be dismissed. Nordmann further discussed the potential sentences Pond might receive if he were convicted of murder, federal charges, and the other state charges.

j. Pond failed to establish that his attorney's performance was deficient.

Appellant's App. Vol. IV pp 10-11.

[37] Pond's trial counsel testified during the post-conviction hearing that he advised Pond that "a more appropriate charge would be reckless homicide." Tr. Vol. II p. 111. His trial counsel discussed with him the elements of the various offenses and focused on the mens rea elements. His trial counsel had a "very lengthy" discussion with Pond regarding the legal definition of "knowingly."

*Id.* at 126. He discussed the strengths and weaknesses of the State's case with Pond and the pros and cons of accepting the guilty plea offer. They discussed the strengths and weaknesses of each possible alternative during plea negotiations and potential consequences that Pond faced. We further note that, in exchange for the guilty plea, several other charges against Pond were dismissed or avoided. Ultimately, the decision to plead guilty to voluntary manslaughter was Pond's decision. Pond has failed to demonstrate that his trial counsel's performance on this issue was deficient. The post-conviction court's finding is not clearly erroneous.

### B. Failure to Investigate

[38] Next, Pond argues that his trial counsel was ineffective for failing to properly investigate and consult qualified experts. Specifically, Pond claims that his trial counsel should have consulted with a ballistics expert and a crime scene reconstructionist and investigated the crime scene. On this issue, the post-conviction court found:

> a. Defense counsel provided an adequate investigation, and considered retaining qualified experts prior to advising the defendant to plead guilty.
>
> b. Nordmann examined all of the evidence provided by the State of Indiana, including the report of the Bureau of Alcohol, Tobacco, and Firearms.
>
> c. The manner of death and the identity of the shooter were never disputed in this case.

d.  Pond argues that an expert should have been consulted to help refute Pond acted with the appropriate mens rea when he shot the rifle.  Pond's lies to the investigators, his actions in hiding the gun, and his comments to the witnesses prior to the shooting and immediately after all suggest Pond was well aware of his actions and intended to shoot at or in the vicinity where he believed other person or persons to be.

e.  Pond also argues now that the ballistics investigation conducted by the Bureau of Alcohol, Tobacco, and Firearms was inaccurate.

f.  Again, the identity of the shooter or the cause of Jacob Michuda's death was never disputed and Pond does not dispute it now.

g.  Pond's ballistic expert retained for the PCR hearing testified that the shot fired by Pond would have gone across the rear of Michuda's property between their home and pool, over a patio.  The rear patio and pool area are visible to Pond, and he was aware of it making Pond's actions even more egregious because this is an area people would likely be, especially during a weekend evening in July.

h.  Nordmann considered consulting an expert; however, Pond's decision to enter a plea of guilty to voluntary manslaughter ended the need to pursue a ballistics expert.

i.  Pond is essentially requesting the Court retry the case and reweigh the evidence, which it will not do.

j. Pond failed to establish his attorney's investigation or decision not to hire an expert witness was deficient.

Appellant's App. Vol. IV p. 12.

[39] Pond's trial counsel testified that he reviewed the State's discovery, which included a report by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), attended depositions, interviewed Pond's son and other witnesses, drove by the crime scene and Pond's residence. Pond's trial counsel testified that he believed that he discussed with Pond the possibility of needing a reconstructionist and a ballistics expert. At the time of the guilty plea, he had not moved forward with retaining such experts, but he had not ruled out retaining them either. Pond's trial counsel specifically discussed with Pond that mens rea was the main issue in the case and made Pond aware of the various possible outcomes. Rather than move forward with a trial, Pond chose to plead guilty. Under such circumstances, we cannot say that Pond's trial counsel's performance was deficient. The post-conviction court's findings on this issue are not clearly erroneous.

### C. Failure to Move for Change of Judge

[40] Next, Pond argues that his trial counsel was ineffective for failing to move for a change of judge. On this issue, the post-conviction court found:

a. Pond was not deprived of effective assistance of counsel because his attorney did not request a change of judge.

b. Indiana "law presumes that a judge is unbiased and unprejudiced." *O'Conner v. State*, 789 N.E.2d 504 (Ind. Ct. App. 2003), citing *James v. State*, 716 N.E.2d 935, 940 (Ind. 1990). Further, the Indiana Code of Judicial Conduct requires judges to perform all duties for that office "fairly and impartially" and without "bias or prejudice." Indiana Judicial Canon 2(A), Rule 2.2 & 2.3. A judge is required by the judicial code to disqualify himself from any proceeding in which his impartiality "might reasonably be questioned[.]" *Id.* The test for determining whether a judge should recuse himself or herself is "whether an objective person, knowledgeable of all the circumstances, would have a reasonable basis for doubting the judge's impartiality." *O'Connor v. State*, 789 N.E.2d 504, 511 (Ind. Ct. App. 2003), citing *James*, 716 N.E.2d at 940.

c. Here, after the State of Indiana listed the victim's paternal grandfather, Mark Michuda, on the State's witness list, the Court had the following exchange with the attorneys on the record.

> I am a member of the same church as Mr. Michuda and know him, I'm not in a social relationship with him, but I know who he is, we are members of the same church. In addition, as is Mr. Michuda's wife is also a member there. In addition, I am in an organization with Mr. Michuda that Mr. Michuda is the President of. I was an officer of that organization, but have resigned as an officer in that organization. I don't know that I have been involved in or had any involvement in activities since Mr. Michuda has been the President. I would say my participation in the organization is probably if ask him probably sporadic at best, but I do want to make the parties aware of that relationship to one

of the witnesses so that they are informed.  Ex. 8, pg. 44.

The Court then further explained:

> . . . like l said, I know Mr. Michuda, would know him on sight, but I've not been social friends of Mr. Michuda's, simply attend the same church he attends.  Quite frankly I don't know when, I go to different times than he typically goes, so I see him there occasionally, but l know is a regular attender there, but I don't see him all the time, we go at different times.  Ex. 8, pg. 45.

d.  Nordmann, Pond's attorney, considered filing a motion for change of judge.  Based upon his experience in practicing in Northeast Indiana, his experience practicing in front of Judge Kiracofe, and his experience practicing against Judge Kiracofe when he was a deputy prosecutor, he decided against filing a change of judge.

e.  Therefore, Nordmann considered the issue, considered his options, and made a calculated decision to not file a motion for change of judge.

f.  Pond has not shown that the actions of or the demeanor of the judge crossed the barrier of impartiality and prejudiced his case.  "An adverse ruling alone is insufficient to show bias or prejudice."  *O'Connor v. State*, 789 N.E.2d 504, 511 (Ind. Ct. App. 2003).

g.  Therefore, Pond was not denied effective assistance of counsel because his trial counsel did not request a change of judge.

Appellant's App. Vol. IV pp. 12-14.

[41] On appeal, Pond argues that his trial counsel should have requested that the trial judge recuse under Indiana Criminal Rule 12(B) because he had "a personal connection" to the victim's grandparents, he had a "professional connection" to the prosecuting attorney, and he was involved in the prosecution of prior crimes against Pond as a deputy prosecutor. Appellant's Br. p. 74. According to Pond, his trial counsel should have filed a motion for change of judge pursuant to Indiana Criminal Rule 12(B), which provides:

> In felony and misdemeanor cases, the state or defendant may request a change of judge for bias or prejudice. The party shall timely file an affidavit that the judge has a personal bias or prejudice against the state or defendant. The affidavit shall state the facts and the reasons for the belief that such bias or prejudice exists, and shall be accompanied by a certificate from the attorney of record that the attorney in good faith believes that the historical facts recited in the affidavit are true. The request shall be granted if the historical facts recited in the affidavit support a rational inference of bias or prejudice.

[42] Pond's trial counsel testified at the post-conviction hearing that he considered filing a motion for change of judge. However, he was familiar with the other judges in the area and ultimately decided that Judge Kiracofe "would be the best option." Tr. Vol. II p. 107. The failure to file a motion for change of judge was a strategic decision that does not support a finding of deficient performance.

Moreover, even if his trial counsel had filed the motion, it is unlikely that it would have been granted. We determined above, *supra* Issue I, that the trial judge's relationship with the victim's grandparents, prior representation of the State in prosecutions against Pond, and professional relationship with the prosecutors did not warrant a finding of personal bias or prejudice. The same analysis applies here. Consequently, the post-conviction court's finding that Pond failed to demonstrate ineffective assistance of trial counsel on this issue is not clearly erroneous.

### D. Failure at Sentencing

Finally, Pond argues that his trial counsel was ineffective for failing to investigate and consult with experts in the context of the sentencing hearing. On this issue, the post-conviction court found:

> a. Pond was not denied effective assistance of counsel at the sentencing hearing.
>
> b. Following the guilty plea hearing, the Wells County Probation Department prepared a presentence investigation report (PSI), filed the same with the Court, and provided a copy to Pond's trial counsel.
>
> c. Nordmann advised Pond's family and girlfriend to send in as many letters of support as possible to the probation department so they would include them in the presentence investigation report.
>
> d. At the sentencing hearing, Nordmann called two witnesses: Barbara Pond and Lynne Klepper, as well as

Pond. Barbara Pond is Pond's mother and Lynne Klepper is Pond's girlfriend. In addition, seven letters were submitted to the probation department and were made a part of the presentence investigation report.

e. Pond presented no evidence that Nordmann refused to obtain a letter from or call as a witness anyone he requested.

f. Nordmann reviewed the presentence investigation report with Pond.

g. Nordmann researched the potential aggravators and mitigators that might exist in the case, and attempted to tailor the mitigating factors as best to suit the facts.

h. Pond now argues that at sentencing, Nordmann should have submitted letters from childhood friends of Pond, hired a toxicologist, hired a mental health professional to discuss Pond's childhood physical abuse, and post-traumatic stress disorder (PTSD).

i. "Sentencing lies within the discretion of the trial court." *Thacker v. State*, 709 N.E.2d 3, 9 (Ind. 1999), *reh'g denied*. If a trial court uses aggravating or mitigating circumstances to enhance the presumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined . . . to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *Id.* The trial court is not required to find the presence of mitigating circumstances, *Fugate v. State*, 608 N.E.2d 1370, 1374 (Ind. 1993). When a defendant offers evidence of mitigators, the trial court has the discretion to determine whether the factors are

mitigating, and it is not required to explain why it does not find the proffered factors to be mitigating. *Taylor v. State*, 681 N.E.2d 1105, 1112 (Ind. 1997). The trial court's assessment of the proper weight of mitigating and aggravating circumstances and the appropriateness of the sentence as a whole are entitled to great deference and will be set aside only upon a showing of a manifest abuse of discretion. *Thacker*, 709 N.E.2d at 10. *McCarty v. State*, 802 N.E.2d 959, 966-67 (Ind. Ct. App. 2004).

j. Seven letters were submitted to the Court through the presentence investigation report regarding Pond's character. Pond now argues additional witnesses could have been called or statements procured regarding Pond's good character. As outlined in the presentencing investigation report, Pond had two convictions for battery, one conviction for domestic battery and invasion of privacy, has a history of substance abuse, he was consuming alcohol while on probation, possessed a firearm in violation of federal and state law and in violation of his probation conditions. His mother testified he applied for and received food stamps while Pond stated in the PSI that he earned $20 per hour restoring vehicles. These factors do not reflect well on his character despite how many people might say he is of good character.

k. The Court is unclear how proving Pond's intoxication or sobriety at the time of the shooting would have changed the Court's decision on sentencing. Under Indiana law, intoxication is not a defense so it would not have been a mitigating factor. If he was proven to be sober by utilizing a toxicologist, it means Pond's actions on the date in question were completely unaffected by alcohol, and he was fully aware of what he was doing; almost becoming an aggravating factor.

l. Further, because only Pond knows exactly how much alcohol he consumed on the date in question, the toxicologist's findings would have been made on Pond's testimony. Based upon the various statements from the witnesses, it is possible the Court would have disbelieved Pond's statement concerning his consumption of alcohol.

m. Nordmann's decision to not hire a toxicologist or failure to consider hiring a toxicologist is completely irrelevant.

n. Pond also argues that Nordmann should have obtained a mental health examination and then he could have presented to the Court the examination results to show Pond suffered PTSD and was remorseful.

o. Pond testified about his remorse at the sentencing hearing stating, "I would give my life in a second to bring that little boy back, but I can't do that. I will live with that every day of my life from now on . . . I am so so so sorry for bringing everybody so much grief, the Michudas for all their heartache, and my family for the embarrassment." Ex. 1B, pg. 32. The Indiana Supreme Court has held that a trial court's determination of a defendant's remorse is similar to a determination of credibility. As such, without evidence of some impermissible consideration by the trial court, a review court will accept its determination as to remorse. *Stout v. State*, 834 N.E.2d 707 (Ind. Ct. App. 2005) citing *Pickens v. State*, 767 N.E.2d 530 (Ind. 2002).

p. Essentially, calling a mental health provider to testify regarding Pond's remorsefulness would be akin to calling a witness to say the defendant is credible.

q. The Indiana Court of Appeals found in *Scott v. State* that the sincerity of a defendant's remorse was entitled to slight

weight in light of the "unprovoked shooting of a randomly selected victim." *Scott v. State*, 840 N.E.2d 376 (Ind. Ct. App. 2006). Here, even if an expert had been called to testify regarding Pond's remorse, the Court could have given it slight weight given the unprovoked and random act that killed a child.

r. The Court is convinced Pond is remorseful. His actions resulted in the death of a four-year-old child and, consequently, will result in him spending forty (40) years in prison.

s. Pond also testified concerning childhood abuse he received from his father. The prosecutor asked him why it was relevant as a mitigating factor. Pond replied he didn't know. The Court also fails to find why this is a mitigating factor.

t. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Games[ v. State]*, 684 N.E.2d [466, ]468 [(Ind. 1997)] (quoting *Strickland v. Washington*, 466 U.S. 668, 697, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), *reh'g denied* 467 US. 1267, 82 L. Ed. 2d 864, 104 S. Ct. 3562 (1984)). If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Id.*

u. Pond has failed to prove that there is a reasonable probability that the result of the sentencing hearing would have been different had Nordmann called additional character witnesses, submitted more letters of support, called a toxicologist, and obtained an evaluation from a mental health examination.

v. Therefore, the Court finds that Pond was not denied effective assistance of counsel at the sentencing hearing.

Appellant's App. Vol. IV pp. 14-16.

[45]     On appeal, Pond argues that his trial counsel was ineffective for failing to investigate and present mitigators, failing to have Pond evaluated by a mental health professional, and failing to consult with a toxicologist. We will address each argument separately.

### 1. Mitigators

[46]     Pond argues that his trial counsel should have performed a better investigation into proposed mitigators, asked more individuals to write letters or testify at sentencing, and better prepared Pond's mother and girlfriend to testify. According to Pond, a better investigation would have revealed that Pond was experiencing considerable mental distress, had positive character traits and remorse, and suffered childhood abuse from his father.

[47]     At the sentencing hearing, Pond's trial counsel presented seven letters of support for Pond and his mother and girlfriend testified in support of him. Pond testified regarding his remorse and childhood abuse by his father. There is no evidence that additional evidence in support of these arguments would have resulted in a shorter sentence. The post-conviction court found that Pond had failed to demonstrate a reasonable probability that the result of the sentencing hearing would have been different if his trial counsel had presented additional evidence, and we agree. Pond's argument fails.

## 2. Mental Health Professional

[48]    Next, Pond argues that his trial counsel should have presented evidence from a mental health professional to show that he suffered from PTSD and depression as a result of the offense. According to Pond, this evidence "would have shown his remorse and corroborated the testimony that he would never deliberately harm a child." Appellant's Br. p. 79. Again, Pond's trial counsel presented evidence of Pond's remorse. Pond testified:

> I would give my life in a second to bring that little boy back, but I can't do that. I will live with that every day of my life from now on and the holidays stunk so bad not because I was in jail but because of the family, that little guy they didn't have him around at Christmas. . . . I am so so so sorry for bringing everybody so much grief, the Michudas for all their heartache, and my family for the embarrassment.

Ex. Vol. IV p. 174. The proposed evidence was cumulative of other evidence presented of Pond's remorse. The post-conviction court found no evidence of a reasonable probability that the result of the sentencing hearing would have been different if Pond's trial counsel had presented evidence of a mental health examination, and we agree. The post-conviction court's finding on this issue is not clearly erroneous.

## 3. Toxicologist

[49]    Finally, Pond argues that his trial counsel was ineffective for failing to present evidence from a toxicologist at the sentencing hearing. He argues that the toxicologist would have demonstrated that Pond was not intoxicated at the time

of the offense. We conclude that Pond was not prejudiced by his trial counsel's failure to present such evidence.

[50] Pond claims that his substance abuse and alcohol consumption on the night of the offense were used as an aggravating factor. As noted when discussing the admission of the toxicologist's report, Pond's intoxication level simply was not found to be an aggravating factor. Rather, in the context of discussing Pond's criminal history, the trial court noted that Pond had several substance abuse convictions and that substance abuse may have "played a factor" in the current offense too. Exhibits Vol. IV p. 57. The post-conviction court correctly found that evidence from a toxicologist would have been irrelevant and possibly harmful to Pond's sentencing. The post-conviction court noted that, if Pond was proven to be sober, "it means Pond's actions on the date in question were completely unaffected by alcohol, and he was fully aware of what he was doing; almost becoming an aggravating factor." Appellant's App. Vol. IV p. 15. Further, the post-conviction court noted that the toxicologist's findings were based on Pond's testimony as to how much alcohol he consumed, which conflicted with other evidence in the case. Consequently, the post-conviction court concluded that Pond failed to prove a reasonable probability that the result of the sentencing hearing would have been different if Pond's trial counsel had presented evidence from a toxicologist. We cannot say that the post-conviction court's finding is clearly erroneous.

## V. Ineffective Assistance of Appellate Counsel

Pond next argues that his appellate counsel was ineffective. Claims of ineffective assistance of appellate counsel are reviewed using the same standard applicable to claims of trial counsel ineffectiveness. *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997), *cert. denied*. These claims generally fall into three categories: (1) denying access to the appeal, (2) waiver of issues, and (3) failure to present issues well. Pond argues that his appellate counsel was ineffective because: (1) there were "substantial deficiencies in the Appellant's Appendix and record;" (2) there were grammatical errors in the Appellant's Brief; (3) Pond's character, letters written on his behalf, a lack of disciplinary issues in the jail, and his childhood abuse were not mentioned in the Appellant's Brief; (4) the Appellant's Brief did not mention the suggested statutory mitigators found by the probation department; (5) the statement of the facts did not contain citations to the record; and (6) appellate counsel failed to provide a separate analysis of abuse of discretion and inappropriate sentence, resulting in waiver of the inappropriate sentence issue. According to Pond, if the appropriateness issue had been considered, there is a reasonable probability that this court would have reduced his sentence.

On this issue, the post-conviction court found:

> a. The Court finds that Pond's arguments on these issues fail.
>
> b. Following the sentencing hearing, Pond sought an appeal of the Court's sentencing decision.

c. Pond chose to be represented by Benjamin Nordmann.

d. The Indiana Court of Appeals issued a Memorandum Decision on September 19, 2012, which found the trial court had not abused its discretion, and affirmed the trial court's decision on Pond's sentence.

* * * * *

g. Because Pond's appeal followed a guilty plea, the only issue before the Court were issues related to sentencing.

h. Here, Pond argues Nordmann's appellate representation was inadequate for several reasons, including that the Appellant's Appendix did not include the charging informations, the probable cause affidavit, the notice of appeal, or any pleadings or orders that were filed or issued prior to December 16, 2011.  He also argues it is deficient because it contains "quite a few typographical errors, capitalization errors, and grammatical errors."  Pond's proposed findings of fact, paragraph 276.

i. Pond's claim of alleged appellate counsel ineffectiveness appears to fall into the third category: inadequate presentation as highlighted in the *Bieghler* decision.

j. In *Bieghler*, the Indiana Supreme Court found that claims of inadequate presentation are the most difficult to advance and reviewing tribunals to support.  The Supreme Court found this to be true for two reasons:

> First, these claims essentially require the reviewing tribunal to review specific issues it has already adjudicated to determine whether the new record

citations, case references, or arguments would have had any marginal effect on its previous decision. Thus, this kind of ineffectiveness claim, as compared to the others mentioned, most implicates concerns of finality, judicial economy, and repose while least affecting assurance of a valid conviction. Second, an Indiana appellate court is not limited in its review of issues to the facts and cases cited and arguments made by the appellant's counsel. We commonly review relevant portions of the record, perform separate legal research, and often decide cases based on legal arguments and reasoning not advanced by either party. While impressive appellate advocacy can influence the decisions appellate judges make and does make our task easier, a less than top notch performance does not necessarily prevent us from appreciating the full measure of an appellant's claim. *Bieghler v. State*, 690 N.E.2d 188, 195 (Ind. 1997).

k. Here, Pond has failed to demonstrate that Nordmann's performance on the appeal was deficient. Further, assuming arguendo the performance was deficient, Pond has failed to demonstrate that he was prejudiced by the deficient performance.

Appellant's App. Vol. IV pp. 16-18.

[53] Even if we assume that appellate counsel's performance was deficient, we cannot say that Pond was prejudiced by the alleged deficiencies. Pond's arguments appear to be in the category of "failure to present issues well." *Bieghler*, 690 N.E.2d at 195. To the extent that Pond's appellate counsel failed to present the abuse of discretion argument well, "an ineffectiveness challenge

resting on counsel's presentation of a claim must overcome the strongest presumption of adequate assistance." *Id.* at 196. "Judicial scrutiny of counsel's performance, already 'highly deferential,' *Spranger v. State*, 650 N.E.2d 1117, 1121 (Ind. 1995), is properly at its highest." *Id.* "Relief is only appropriate when the appellate court is confident it would have ruled differently." *Id.* Pond has made no showing that the alleged deficiencies in the Appellant's Brief, Appellant's Appendix, or record impacted his appeal in any way or that, without those deficiencies, his appeal would have been successful.

[54] The main thrust of his argument seems to be that an argument that his sentence was inappropriate under Indiana Appellate Rule 7(B) would have been successful. Although appellate counsel mentioned Appellate Rule 7(B), he waived the issue by failing to make a separate argument regarding the issue. *See Pond*, No. 90A05-1202-CR-73, slip op. at 9 n.1. However, even if Pond's appellate counsel had properly raised the Appellate Rule 7(B) issue, the argument is unlikely to have been successful.

[55] Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender. When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). Still, we must give due consideration to that decision. *Id.* We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. *Id.* Under

this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[56] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.* When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[57] The nature of Pond's offense is that he was annoyed by a moving light on a neighbor's property, retrieved his gun, fired two shots, and said, "That will teach them." PSI p. 23. Four-year-old Jacob was shot in the forehead, and he died a few hours later. Pond had his son hide the firearm and initially denied any involvement in the shooting. Pond admitted his involvement only after his son and other visitor during the incident came forward.

[58] As for Pond's character, he has multiple prior convictions, including for domestic battery, battery, invasion of privacy, and operating while intoxicated.

His probation has been revoked twice, and he was on probation at the time of this offense. He expressed remorse for shooting Jacob and pled guilty. Testimony and letters were presented at the sentencing hearing regarding Pond's good character.

[59] Even if Pond's appellate counsel had properly presented the Appellate Rule 7(B) issue, we cannot say that Pond's sentence would have been found inappropriate. Given the nature of the offense and Pond's criminal history, the likelihood of Pond's forty-year sentence being reduced on direct appeal was slight. Pond has failed to demonstrate that, but for his appellate counsel's alleged deficiencies, his sentence would have been reduced. The post-conviction court's findings denying Pond's ineffective assistance of appellate counsel claim are not clearly erroneous.

## Conclusion

[60] The post-conviction court properly denied Pond's petition for post-conviction relief. We affirm.

[61] Affirmed.

Vaidik, C.J., and Pyle, J., concur.